No. 25-1847

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| STEPHANIE SCHOLL and FRANK BEDNARZ,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>ILLINOIS STATE POLICE; BRENDAN F. KELLY, in his official capacity as Director of the Illinois State Police; JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois; and KWAME RAOUL, in his official capacity as Attorney General of Illinois,<br><br>Defendants-Appellees. | ) | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>No. 1:24-cv-04435<br><br>The Honorable MARTHA M. PACOLD, Judge Presiding. |

**BRIEF OF DEFENDANTS-APPELLEES**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendants-Appellees

**ANNA W. GOTTLIEB**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2234 (office)
(773) 590-7793 (cell)
Anna.Gottlieb@ilag.gov

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS


*Page*

JURISDICTIONAL STATEMENT ........ 1

ISSUES PRESENTED FOR REVIEW ........ 3

STATEMENT OF THE CASE ........ 5

The Tamara Clayton Expressway Camera Act ........ 5

Plaintiffs' Complaint ........ 7

District Court's Order Dismissing Plaintiffs' Complaint ........ 8

SUMMARY OF ARGUMENT ........ 12

ARGUMENT ........ 14

I. The district court properly dismissed plaintiffs' complaint. ........ 14

A. The use of automated license plate readers to capture images of license plates is not a search under the Fourth Amendment because it implicates no reasonable expectation of privacy. ........ 14

B. Any challenge to the possible future retrieval of temporarily stored automated license plate reader images likewise fails. ........ 22

1. Plaintiffs lack standing to challenge the use of the database to retrieve automated license plate reader images ........ 23

2. In any event, any retrieval of images from the database would not constitute a Fourth Amendment search ........ 26

C. Regardless of whether plaintiffs stated a claim, this court should reject their facial challenge. ........ 31

II. The district court properly dismissed the Governor, the Attorney General, and Illinois State Police because the claims against them are barred by the Eleventh Amendment. ........ 33

III. The district court did not abuse its discretion when it denied plaintiffs' request for a preliminary injunction. 35

CONCLUSION 40

CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF FILING AND SERVICE

## TABLE OF AUTHORITIES

**Cases**


*Page(s)*

*Aurora Bancshares Corp. v. Weston*,
777 F.2d 385 (7th Cir. 1985) .......... 36, 37

*Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*,
13 F.4th 560 (7th Cir. 2021) .......... 25

*Carpenter v. United States*,
585 U.S. 296 (2018) .......... *passim*

*Cent. States, Se. & Sw. Areas Pension Fund v. Transervice Logistics, Inc.*,
56 F.4th 516 (7th Cir. 2022) .......... 14

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) .......... 33

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 25

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) .......... 24

*Commonwealth v. Bell*,
No. CR23001500-00; 01; 02, 2024 WL 5516362 (Norfolk Cty. Cir. Ct. May 10, 2024) .......... 21

*Commonwealth v. McCarthy*,
142 N.E.3d 1090 (Mass. 2020). .......... 21

*Ctr. for Individual Freedom v. Madigan*,
697 F.3d 464 (7th Cir. 2012) .......... 25, 33

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003). .......... 5

*Doe v. Holcomb*,
883 F.3d 971 (7th Cir. 2018) .......... 34, 35

*Donovan v. Dewey*,
452 U.S. 594 (1981) .......... 32

*Dow Chem. Co. v. United States*,
476 U.S. 227 (1986) .......... 18

*Ex Parte Young*,
209 U.S. 123 (1908) .......... 8, 33

*Katz v. United States*,
389 U.S. 347 (1967) .......... 9, 15

*Lapre v. City of Chi.*,
911 F.3d 424 (7th Cir. 2018) .................................................. 14, 31

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
2 F.4th 330 (4th Cir. 2021) .................................................. 10, 29, 30

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................. 23

*Minocqua Brewing Co. v. Hess*,
160 F.4th 849 (7th Cir. 2025) .................................................. 37

*Naperville Smart Meter Awareness v. City of Naperville*,
900 F.3d 521 (7th Cir. 2018) .................................................. 32

*New York v. Class*,
475 U.S. 106 (1986) .................................................. 16

*Ollison v. Gossett*,
136 F.4th 729 (7th Cir. 2025) .................................................. 27

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) .................................................. 34

*Prosser v. Becerra*,
2 F.4th 708 (7th Cir. 2021) .................................................. 26

*Schmidt v. City of Norfolk*,
No. 2:24-cv-621, 2026 WL 207513 (E.D. Va. Jan. 27, 2026) .................................................. 20, 21

*Schmidt v. City of Norfolk*,
No. 2:24-cv-621, 2025 U.S. Dist. LEXIS 21096 (E.D. Va. Feb. 5, 2025) .................................................. 21

*Seminole Tribe of Florida v. Florida*,
517 U.S. 44 (1996) .................................................. 34

*Sherwood v. Marchiori*,
76 F.4th 688 (7th Cir. 2023) .................................................. 34

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .................................................. 23, 25

*Swanigan v. City of Chi.*,
881 F.3d 577 (7th Cir. 2018) .................................................. 25

*Tucker v. Williams*,
682 F.3d 654 (7th Cir. 2012) .................................................. 34

*Ty, Inc. v. Jones Grp., Inc.*,
237 F.3d 891 (7th Cir. 2001) .................................................. 38

*United States v. Brown*,
No. 19-cr-00949, 2021 WL 4963602 (N.D. Ill. Oct. 26, 2021) ............................ 20

*United States v. Diaz–Castaneda*,
494 F.3d 1146 (9th Cir. 2007) ........................................................................ 17

*United States v. Ellison*,
462 F.3d 557 (6th Cir. 2006) .......................................................................... 17

*United States v. Green*,
149 F.4th 733 (D.C. Cir. 2025) ........................................................................ 22

*United States v. Hammond*,
996 F.3d 374 (7th Cir. 2021) .................................................................. 10, 17, 22

*United States v. House*,
120 F.4th 1313 (7th Cir. 2024) ............................................................... 10, 28, 30

*United States v. Johnson*,
43 F.4th 771 (7th Cir. 2022) ............................................................................ 33

*United States v. Jones*,
565 U.S. 400 (2012) ................................................................................... 10, 15

*United States v. Knotts*,
460 U.S. 276 (1983) ........................................................................ 10, 17, 19, 20

*United States v. Martin*,
753 F. Supp. 3d 454, 460 (E.D. Va. 2024) ......................................................... 20

*United States v. Miranda-Sotolongo*,
827 F.3d 663 (7th Cir. 2016) .......................................................................... 17

*United States v. Porter*,
No. 21-cr-00087, 2022 WL 124563 (N.D. Ill. Jan. 13, 2022) ........................ 20, 38

*United States v. Salerno*,
481 U.S. 739 (1987) ................................................................................... 31, 33

*United States v. Scott*,
731 F.3d 659 (7th Cir. 2013) .......................................................................... 16

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ................................................................. 27, 28, 29

*United States v. Toombs*,
671 F. Supp. 3d 1329 (N.D. Ala. 2023) ........................................................ 20-21

*United States v. Town of Cicero*,
786 F.2d 331 (7th Cir. 1986) ..................................................................... 36, 37

*United States v. Trice*,
966 F.3d 506 (6th Cir. 2020) ........................................................................ 22

*United States v. Tuggle*,
4 F.4th 505 (7th Cir. 2021)........................................................................*passim*

*United States v. Walraven*,
892 F.2d 972 (10th Cir. 1989) ...................................................................... 17

*United States v. Yang*,
958 F.3d 851 (9th Cir. 2020) ........................................................................ 32

*Valencia v. City of Springfield, Ill.*,
883 F.3d 959 (7th Cir. 2018) ........................................................................ 37

*Wedemeyer v. CSX Transportation, Inc.*,
850 F.3d 889 (7th Cir. 2017) ................................................................ 26, 34

**Statutes and Regulations**

605 ILCS 140/3 ............................................................................................. 6

605 ILCS 140/5(a)................................................................................... 5, 34

605 ILCS 140/5(b)............................................................. 6, 7, 23, 24, 32, 38

625 ILCS 5/3-413(a) ...................................................................................... 16

**Constitutional Provisions**

U.S. Const. amend. IV.................................................................................... 15

**Other Authorities**

Illinois State Police, Automated License Plate Reader – Transparency Page,
https://bit.ly/3NcUvPQ (last visited Feb. 25, 2026) .............................................. 5

Illinois State Police, IL Reported Expressway Shootings (2019-Current Year),
https://bit.ly/3N6gbxb (last accessed Feb. 25, 2026) ...................................... 5, 39

Illinois State Police Automated License Plater Reader Statistics Dashboard,
https://bit.ly/4sxX8fd (last accessed Feb. 25, 2026). ............................................ 5

Illinois State Police, Expressway Camera Act Annual Report July 1, 2024-June 30,
2025 (FY25), July 21, 2025, *available at* https://bit.ly/4qGoDS4.................... 6, 16

Illinois State Police, Expressway Camera Act Annual Report July 1, 2023-June 30,
2024 (FY24), July 10, 2024, *available at* https://shorturl.at/CaOOJ. .................. 6

Illinois State Police Directive, ENF-051, Automated License Plate Readers
(ALPR)/Law Enforcement Archival Retrieval Network (LEARN), *available at*
https://bit.ly/49Mgfea.......................................................................................... 7

Illinois State Police, Expressway Camera Act Annual Report July 1, 2024-June 30, 2025 (FY25), July 21, 2025, *available at* https://bit.ly/4qGoDS4 ........................ 22

Orin S. Kerr,
*The Mosaic Theory of the Fourth Amendment*, 111 Mich. L. Rev. 311 (2012) ... 27

P.A. 101-42, § 5 (eff. Jan. 1, 2020) ........................................................................ 5

P.A. 102-1043, § 5 (eff. June 3, 2022) ...................................................................... 5

P.A. 104-18, § 5 (eff. June 30, 2025) ........................................................................ 5

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants Stephanie Scholl and Frank Bednarz's jurisdictional statement is not complete and correct. As required by 7th Cir. R. 28(b), Defendants-Appellees Illinois State Police, Illinois State Police Director Brendan F. Kelly, Illinois Governor JB Pritzker, and Illinois Attorney General Kwame Raoul provide this statement.

Plaintiffs, residents of Cook County who allege that they regularly use the expressways in Cook County and surrounding areas, filed a complaint seeking injunctive relief in the district court under 42 U.S.C. § 1983, claiming that defendants' use of automated license plate readers installed pursuant to the Tamera Clayton Expressway Camera Act ("Act"), 605 ILCS 140/1 *et seq.*, to "track[ ] their movements" violated their rights under the Fourth and Fourteenth Amendments to the United States Constitution, Doc. 1 at 9.[1] Plaintiffs sued the Director, the Governor, and the Attorney General in their official capacities only. *Id.* at 3. The claims against the Governor, the Attorney General, and Illinois State Police were barred by the Eleventh Amendment, as explained *infra* Part II, and to the extent that the Eleventh Amendment to the United States Constitution affects subject matter jurisdiction, the district court lacked federal question jurisdiction over those claims. *See McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 532-34 (7th Cir. 2022) (Eleventh Amendment immunity is jurisdictional but can be waived); *see also Wis. Dep't of*

---

[1] This brief cites the record on appeal, which is the district court's docket, as "Doc. __" and plaintiffs' opening brief as "AT Br. __."

*Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (United States Supreme Court has "not decided" whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction"). The district court otherwise had subject matter jurisdiction over plaintiffs' action under 28 U.S.C. § 1331 because it raised a federal question.

On March 31, 2025, the district court dismissed the complaint for, among other reasons, failure to state a claim. Doc. 41. In the order, the district court stated that plaintiffs could file a motion for leave to amend "if they wish to do so and believe they can do so consistent with this opinion and Rule 11" by April 30, 2025, or the court would otherwise enter final judgment and terminate the case. *Id.* at 18. On April 29, 2025, plaintiffs filed a status report notifying the district court that they would not file a motion for leave to amend and would instead appeal from a final judgment. Doc. 42.

On May 2, 2025 the district court entered a minute order stating that it had dismissed the claims against Illinois State Police, the Governor, and the Attorney General without prejudice for lack of jurisdiction. Doc. 43. The court further noted that it had dismissed the claim against the Director (to the extent that they challenged the use of automated license plate readers to collect images of license plates) with prejudice for failure to state a claim, but that it had dismissed the claim against the Director (to the extent that they challenged the subsequent use of images in a database) without prejudice for lack of jurisdiction. *Id.*

Also on May 2, 2025, a separate judgment order was entered on the district court docket pursuant to Fed. R. Civ. P. 58. Doc. 44. Although the district court's

order dismissing the complaint allowed plaintiffs the opportunity to replead, *see* Doc. 41 at 18, indicating that the dismissal was without prejudice, and later explained that some of the claims were dismissed without prejudice, Doc. 43, that does not affect the judgment's finality because plaintiffs indicated that they did not plan to seek leave to file an amended complaint and, moreover, the district court signaled that it "was finished with the case" by entering a separate judgment. *Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016). No motion to alter or amend the judgment was filed.

On May 15, 2025, plaintiffs filed a notice of appeal. Doc. 45. The notice of appeal was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the judgment's entry. This court has jurisdiction over plaintiffs' appeal from a final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court properly dismissed plaintiffs' Fourth Amendment claims because (a) plaintiffs have no reasonable expectation of privacy in the information captured by automated license plate readers along public expressways and highways; (b) plaintiffs lack standing to challenge any future retrieval of license plate images temporarily stored in the database because they have not sufficiently alleged that their license plate images will be accessed under the Act, or, in the alternative, any future retrieval is likewise not a search under the Fourth Amendment; or (c) plaintiffs brought a facial challenge to the Act but have not established that the Act is unconstitutional in every instance.

2. Whether the district court properly dismissed plaintiffs' claims against the Governor and the Attorney General in their official capacities, as well as against Illinois State Police, because those claims are barred by the Eleventh Amendment.

3. Whether, if the district court should not have dismissed plaintiffs' complaint, this court should vacate and remand the district court's denial of plaintiffs' request for a preliminary injunction to that court to consider all preliminary injunction factors in the first instance, or, alternatively, hold that the district court did not abuse its discretion in denying a preliminary injunction.

## STATEMENT OF THE CASE

**The Tamara Clayton Expressway Camera Act**

In 2020, the Illinois General Assembly enacted the Act, 605 ILCS 140/1 *et seq.*, in response to the 2019 fatal shooting of a United States Postal Service worker on the I-57 expressway. Doc. 1 at 3; Illinois State Police, Automated License Plate Reader – Transparency Page, https://bit.ly/3NcUvPQ (last visited Feb. 25, 2026) ("ALPR Transparency Page").[2] Indeed, since 2019, there have been 981 reported shootings on Illinois expressways. Illinois State Police, IL Reported Expressway Shootings (2019-Current Year), https://bit.ly/3N6gbxb (last visited Feb. 25, 2026). The Act directed several state agencies, including Illinois State Police, to establish a program that would increase the number of automated license plate readers along expressways and state highways in Cook County and 24 other Illinois counties, as well as along Lake Shore Drive in Cook County. 605 ILCS 140/5(a); *see also* P.A. 101-42, § 5 (eff. Jan. 1, 2020) (enacting program for Cook County), P.A. 102-1043, § 5 (eff. June 3, 2022) (same for 21 other counties), P.A. 104-18, § 5 (eff. June 30, 2025) (same for three additional counties). As of July 2025, there are 588 automated license plate readers installed statewide, with 361 of them in Cook County. ALPR Transparency Page; Illinois State Police, Illinois State Police Automated License Plater Reader Statistics Dashboard, https://bit.ly/4sxX8fd (last visited Feb. 25, 2026).

[2] This court may take judicial notice of information on a government website. *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003).

Automated license plate readers are "designed to capture the image of a vehicle's rear license plate." Illinois State Police, Expressway Camera Act Annual Report July 1, 2024-June 30, 2025 (FY25), at 2, July 21, 2025, https://bit.ly/4qGoDS4 ("Illinois State Police FY25 Report"). Once the image of a license plate is captured, software compares the license plate number against several law enforcement databases, including National Amber Alerts (a database for child abduction cases), the National Crime Information Center (a database for missing persons), and the Law Enforcement Agency Data System (a state crime database). *Id.*; *see also* Doc. 1 at 4-5.

The images collected by automated license plate readers are initially stored in the "Vehicle Manager" database (which was previously called the "LEARN" database). Doc. 1 at 7; Illinois State Police, Expressway Camera Act Annual Report July 1, 2023-June 30, 2024 (FY24), at 2, July 10, 2024, https://shorturl.at/CaOOJ. While retained in the database, the images may be accessed only by authorized users — meaning law enforcement personnel who have received training on reviewing and using images, 605 ILCS 140/3 — and may be used only to investigate offenses involving a vehicular hijacking, an aggravated vehicular hijacking, terrorism, motor vehicle theft, or a forcible felony, *id.* § 5(b); *see id.* § 3 (listing offenses that qualify as forcible felonies, including murder, sexual assault, kidnapping, and burglary). The images may also be used to "detect expressway hazards and highway conditions" and "to facilitate highways safety and incident management." *Id.* § 3(b). After 90 days, however, the images are deleted unless they resulted in "hits" when they were

compared against the law enforcement databases or are being used in an investigation. Illinois State Police Directive, ENF-051, Automated License Plate Readers (ALPR)/Law Enforcement Archival Retrieval Network (LEARN) at 1, 5, https://bit.ly/49Mgfea ("Illinois State Police Directive ENF-051"); *see* Doc. 1 at 7; *but see* 605 ILCS 140/5(b) (requiring deletion of all images within 120 days unless "relevant to an ongoing investigation or pending criminal trial").

**Plaintiffs' Complaint**

In May 2024, plaintiffs, two individuals who reside in Cook County and have valid Illinois driver's licenses, filed a complaint in the district court. Doc. 1 at 1-2. Plaintiffs alleged that they regularly drive on the expressways in Cook County and surrounding areas. *Id*. at 2. Plaintiffs brought a claim under 42 U.S.C. § 1983 in which they alleged that defendants are violating their Fourth Amendments rights against unreasonable searches "by tracking their movements via continuous dragnet surveillance of any citizen who drives a car." *Id*. at 3, 9. Plaintiffs sued the Governor, the Attorney General, and the Director in their official capacities only, *id*. at 3, and sought to enjoin them, as well as Illinois State Police, from operating the existing automated license plate readers and from installing additional readers, *id*. at 10.

Three months after filing their complaint, plaintiffs moved for a preliminary injunction, Docs. 14, 15, seeking to enjoin defendants, during the pendency of the litigation, from retrieving the images stored in the database without a warrant, Doc.

15 at 13. Defendants then moved to dismiss plaintiffs' complaint and opposed plaintiffs' motion for a preliminary injunction. Docs. 22, 23.

**District Court's Order Dismissing Plaintiffs' Complaint**

The district court dismissed the complaint. Doc. 41. Initially, the court held that the claims against the Governor and the Attorney General were barred by the Eleventh Amendment. *Id.* at 7-9. The court explained that although *Ex Parte Young*, 209 U.S. 123 (1908), provides an exception to the bar against suits against the State in federal court when that suit is seeking prospective relief from state officials for violations of federal law, such suits can only proceed against officials who "'have some connection with the enforcement of'" the challenged federal law, and neither the Governor nor the Attorney General have any such connection to the enforcement of the Act. *Id.* at 9 (quoting *Ex Parte Young*, 209 U.S. at 157). Similarly, the court held, plaintiffs' suit could not proceed against Illinois State Police because the *Ex Parte Young* exception extends only to suits against state officials, not the State or one of its departments. *Id.*

Next, the district court rejected plaintiffs' Fourth Amendment claim against the Director, the only remaining defendant. *Id.* at 9-18; *see also id.* at 6-7. The court explained that the relief plaintiffs sought was two-fold: to enjoin the use of automated license plate readers to photograph license plates and to enjoin the use of the database to retrieve images of license plates. *Id.* at 5-6. As a threshold matter, the court held that plaintiffs did not have standing to challenge the use of the database to retrieve images because plaintiffs pleaded no facts indicating that there

was a substantial risk that law enforcement would retrieve images of *their* license plates from the database. *Id.* at 6-7. Plaintiffs did not allege, for example, that they would soon commit, or could be the victims of, any of the crimes listed in the Act or that their license plate images would soon be used to detect hazards on the expressway. *Id.* at 6. And absent any facts tending to suggest that plaintiffs' alleged injuries — that is, the retrieval of images of their license plates — were sufficiently imminent, plaintiffs did not have standing to challenge the use of the database. *Id.* at 6-7.

On the merits, the district court held that the use of the automated license plate readers to photograph and collect images of license plates does not constitute a search under the Fourth Amendment. *Id.* at 9-18. The court reasoned, first, that individuals have a diminished expectation of privacy in their automobiles, and they have no reasonable expectation of privacy in their license plates. *Id.* at 10-11. The court acknowledged that plaintiffs "are concerned less with the license plates themselves and more with what the ALPR data reveals about their movements." *Id.* at 11. But, the court explained, a person traveling in an automobile on a public thoroughfare has no reasonable expectation of privacy in their movements on that thoroughfare because "what a person knowingly exposes to the public is not a subject of Fourth Amendment protection." *Id.* (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)) (cleaned up)).

The district court also noted that plaintiffs' argument resembled the "mosaic theory" — "'the idea that the government can learn more from a given slice of

information if it can put that information in the context of a broader pattern, a mosaic.'" *Id*. at 12 (quoting *United States v. House*, 120 F.4th 1313, 1318 (7th Cir. 2024)). However, the district court added, this court has declined to rely on that theory and, when resolving Fourth Amendment challenges to modern surveillance techniques, has instead compared the "challenged surveillance program to the surveillance methods tested in earlier cases." *Id*. (citing *United States v. Hammond*, 996 F.3d 374, 389 (7th Cir. 2021)).

Applying that approach here, the district court determined that the images captured by the readers, which are only captured when a vehicle passes by a limited number of locations, are akin to a beeper that periodically transmits a vehicle's location on public streets and highways and to a stationary pole camera, both of which have been held not to constitute a Fourth Amendment search. *Id*. at 17 (citing *United States v. Knotts*, 460 U.S. 276 (1983), and *United States v. Tuggle*, 4 F.4th 505 (7th Cir. 2021)). The court further reasoned that the automated license plate reader program "lacks the same depth, breadth, and comprehensive reach" as surveillance techniques that have been held to constitute Fourth Amendment searches, specifically GPS tracking, the acquisition of cell-site information, and aerial surveillance. *Id*. at 16 (internal quotation marks omitted); *see also id.* at 16-17 (distinguishing *United States v. Jones*, 565 U.S. 400 (2012); *Carpenter v. United States*, 585 U.S. 296 (2018); and *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021) (*en banc*)). Given the program's "dramatically

reduced scope," the court held that its use was not a search under the Fourth Amendment. *Id.* at 17.

Finally, the district court added that, in reaching this conclusion, it was "join[ing] the nearly uniform consensus of courts that have evaluated the constitutionality of ALPRs and held that their uses 'were not Fourth Amendment searches requiring warrants or probable cause.'" *Id.* at 18 (quoting *State v. Sidor*, 558 P.3d 621, 631 (Ariz. Ct. App. 2024) and collecting cases). And because the court held that plaintiffs had failed to state a claim, the court also held that they were unlikely to succeed on the merits of their claims and denied their motion for preliminary injunction on this basis. *Id.*

Plaintiffs appealed. Doc. 45.

## SUMMARY OF ARGUMENT

This court should uphold the dismissal of plaintiffs' complaint for several reasons.

First, the district court properly held that the collection of images captured by automated license plate readers under the Act does not constitute a search under the Fourth Amendment. As relevant here, a Fourth Amendment search occurs only where the government infringes upon an expectation of privacy that society recognizes as reasonable, and to the extent plaintiffs have expectations of privacy that are implicated by the Act, those expectations are not reasonable. Courts have long held that individuals traveling on public thoroughfares have no reasonable expectation of privacy in their movements on those thoroughfares, and the Act is consistent with this principle. Thus, merely photographing a license plate on a public expressway or highway — when that license plate could be viewed by a law enforcement officer traveling on that expressway or highway, or observing from the side of the road — is no different than a permissible check of a license plate along a public roadway. And even capturing multiple images of a vehicle at different locations could not reveal sufficient details about an individual's movements to infringe on a reasonable expectation of privacy because, under the Act, automated license plate readers may be installed only at fixed sites on public expressways and highways.

Second, the district court properly determined that plaintiffs lacked standing to challenge the second aspect of the Act — the possible future retrieval of license

plate images captured by automated license plate readers for limited law enforcement purposes or to manage highway safety — because plaintiffs failed to plead that the Act's enforcement places them at a substantial risk of harm. To the contrary, plaintiffs pleaded no facts tending to suggest that they will be investigated for any of the crimes specifically enumerated in the Act, such that law enforcement would access any images of their license plates, or that images of their license plates would be used to detect expressway hazards or otherwise assist with expressway safety. But to the extent the court considers the merits of this challenge, it likewise fails because plaintiffs have no reasonable expectation of privacy in any temporarily stored images of their license plates because those images, at most, can reveal intermittent information about a vehicle's travels along public expressways and highways, not the whole of an individual's physical movements.

But in any event, plaintiffs have not shown, and cannot show, that the Act is unconstitutional in all applications, which provides an alternate ground to affirm the dismissal of their facial challenge to the Act.

Separately, the district court properly dismissed the Governor and the Attorney General because plaintiffs' official-capacity claims against them are barred by the Eleventh Amendment, and, contrary to plaintiffs' contentions, neither has a role in enforcing the Act. Likewise, the claim against Illinois State Police is barred by the Eleventh Amendment because it is a state agency.

Finally, should this court reverse the district court's decision granting defendants' motion to dismiss, it should not consider plaintiffs' request for a

preliminary injunction but instead should remand to the district court to consider all of the preliminary injunction factors in the first instance. But if the court addresses plaintiffs' request, it should hold that the district court did not abuse its discretion in denying a preliminary injunction because plaintiffs cannot show irreparable harm, particularly given that they waited until years after the Act's enactment to file this lawsuit and then waited several more months to seek preliminary relief. Plaintiffs will also have other remedies available to them in the event that law enforcement were, in the course of an investigation, to retrieve images of their license plates, and the balance of harms does not weigh in plaintiffs' favor.

## ARGUMENT

### I. The district court properly dismissed plaintiffs' complaint.

This court should affirm the district court's dismissal of plaintiffs' Fourth Amendment claims. This court reviews a ruling on a motion to dismiss *de novo*. *Cent. States, Se. & Sw. Areas Pension Fund v. Transervice Logistics, Inc.*, 56 F.4th 516, 524 (7th Cir. 2022). On *de novo* review, this court may affirm on any basis supported by the record and law. *Lapre v. City of Chi.*, 911 F.3d 424, 430 (7th Cir. 2018).

#### A. The use of automated license plate readers to capture images of license plates is not a search under the Fourth Amendment because it implicates no reasonable expectation of privacy.

The district court correctly rejected plaintiffs' challenge to the use of automated license plate readers to capture images of license plates along public expressways and highways because this does not violate any expectation of privacy

that society is prepared to recognize as reasonable. *See* Doc. 41 at 9-18. Plaintiffs have no reasonable expectation of privacy in a check of their license plates, nor do they have a reasonable expectation of privacy in their movements while traveling in a vehicle on public expressways or highways. Using automated license plate readers to capture images of vehicles' license plates at certain locations, thus, does not constitute a search under the Fourth Amendment.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court has set out two ways in which government action may constitute a search under the Fourth Amendment. *See United States v. Tuggle*, 4 F.4th 505, 512 (7th Cir. 2021). First, a search occurs when the government physically intrudes into a constitutionally protected area. *United States v. Jones*, 565 U.S. 400, 407 (2012). Second, a search occurs when the government infringes upon an expectation of privacy that "society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). Plaintiffs have not pled or argued any physical intrusion; thus, only the second standard — which asks whether Illinois's automated license plate reader program infringes upon a reasonable expectation of privacy — is at issue here.

The Supreme Court first recognized a search not tied to physical trespass in *Katz*, 389 U.S. at 353, where the Court held that listening to and recording a call on a public telephone constituted a search under the Fourth Amendment even though law

enforcement used an electronic device that did not penetrate the walls of the telephone booth. The resulting test had two components, a subjective and an objective one. First, the individual raising the Fourth Amendment challenge must exhibit an actual expectation of privacy. *Id*. at 361 (Harlan, J., concurring). Second, the court must assess whether that expectation of privacy is one that society is prepared to recognize as reasonable. *Id*. The individual invoking Fourth Amendment protection "bears the burden of establishing that he had a reasonable expectation of privacy in what was searched." *United States v. Scott*, 731 F.3d 659, 663 (7th Cir. 2013).

Plaintiffs have no reasonable expectation of privacy in the images collected by automated license plate readers, which are designed to capture photographs only of the rear license plates of vehicles traveling on public expressways or highways. *See* Illinois State Police FY25 Report, at 2. Under Illinois law, vehicles must display two registration plates, one on the front and one on the back. 625 ILCS 5/3-413(a). The Supreme Court has held that it "is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile." *New York v. Class*, 475 U.S. 106, 114 (1986). The Court reasoned that the "exterior of a car . . . is thrust into the public eye, and thus to examine it does not constitute a 'search.'" *Id*.

Consistent with this principle, courts have uniformly held that when a law enforcement officer "observ[es] and record[s]" a license plate and then runs it "against official public records," that does not constitute a search under the Fourth

Amendment. *United States v. Miranda-Sotolongo*, 827 F.3d 663, 668 (7th Cir. 2016); *accord United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007) ("[W]hen police officers see a license plate in plain view, and then use that plate to access additional non-private information about the car and its owner, they do not conduct a Fourth Amendment search."); *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006) ("[S]o long as the officer had a right to be in a position to observe the defendant's license plate, any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment."); *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989) ("[B]ecause they are in plain view, no privacy interest exists in license plates.").

Here, as the district court acknowledged, plaintiffs "are concerned less with the license plates themselves and more with what the [automated license plate reader] data reveals about their movements." Doc. 41 at 11. But plaintiffs likewise have no reasonable expectation of privacy in any information about their movements that can be gleaned from the images captured by automated license plate readers. The Supreme Court has held, and this court has reaffirmed, that a "person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281 (1983); *see also United States v. Hammond*, 996 F.3d 374, 389 (7th Cir. 2021) (no Fourth Amendment search where data revealed only information "already exposed to public view while [defendant] travelled on public, interstate highways and into

parking lots within the public's view"). Automated license plate readers exhibit no characteristics that would take them out of this general rule.

Although courts have cautioned that "using highly sophisticated surveillance equipment not generally available to the public" for "surveillance of private property" may "be constitutionally proscribed absent a warrant," *Dow Chem. Co. v. United States*, 476 U.S. 227, 238 (1986), automated license plate readers are neither so sophisticated that they are akin to equipment not available to the public nor used to engage in surveillance analogous to surveillance of private property. At most, the readers assist law enforcement by photographing what a member of the public stationed or traveling on a public thoroughfare could have seen by visual observation (and photographed using a camera accessible to anyone); thus, the readers merely "augment[ ] the sensory faculties bestowed upon [law enforcement officers] at birth with such enhancement as science and technology afforded them in certain instances." *Tuggle*, 4 F.4th at 514 (internal quotations omitted); *see also id*. at 516 ("While the video cameras in this case undoubtedly gave the government more detailed information than naked-eye views, they did not do so to a degree that gives rise to constitutional problems.") (cleaned up). Indeed, "the Supreme Court has routinely approved of law enforcement officers' use of cameras to aid investigations." *Id*. at 515 (discussing *Dow Chem. Co.*, 476 U.S. 227, and *California v. Ciraolo*, 476 U.S. 207 (1986)).

Not only do automated license plate readers capture nothing more than what a member of the public stationed or traveling along a public thoroughfare could have

seen, they are stationary devices designed to capture only an image of a vehicle's rear license plate when that vehicle passes near them on a public expressway or highway. In that regard, this case is akin to *United State v. Tuggle*, 4 F.4th 505. In *Tuggle*, this court considered whether the use of three stationary pole cameras over the course of 18 months constituted a search under the Fourth Amendment. *Id.* at 511. The court concluded that "the government's use of a technology in public use, while occupying a place it was lawfully entitled to be, to observe plainly visible happenings, did not run afoul of the Fourth Amendment." *Id*. As the court explained, although the "recordings painted a whole picture of the happenings outside [defendant's] front door by recording nonstop for eighteen months," they "only depicted one small part of a much larger whole: [defendant's] life or the whole of his physical movements." *Id*. at 524 (internal quotation marks omitted). Likewise, automated license plate readers, at most, capture a "sliver*,"* of plaintiffs' movements — their vehicles' location as the vehicles travel by fixed points on public expressways and highways — and not the "exhaustive picture" of plaintiffs' "every" movement required to implicate an expectation of privacy that society recognizes as reasonable. *Id.*

To be sure, because the automated license plate readers are located at different sites along public expressways and highways, they may capture multiple images of a vehicle's license plate at different locations, but this does not render the use of readers a Fourth Amendment search. As the district court explained, Doc. 41 at 17, *United States v. Knotts*, 460 U.S. 276, is instructive. There, the Supreme Court considered whether the use of a beeper, which law enforcement officers had placed

inside contraband acquired by a criminal defendant and which emitted periodic signals allowing the officers to track the defendant's vehicle, constituted a search under the Fourth Amendment. *Knotts*, 460 U.S. at 281-82. The Court held that it did not because the beeper enabled the officers to follow the defendant's movements only "over [] public streets," and by traveling on public thoroughfares, the defendant had "voluntarily conveyed[,] to anyone who wanted to look[,] the fact that he was travelling over particular roads in a particular direction." *Id*. at 281-82. As the district court recognized, the use of automated license plate readers is "akin to the beeper in *Knotts*": the readers capture nothing more than a vehicle's intermittent location on the public expressways and highways where the vehicle's driver has chosen to travel. Doc. 41 at 17.

Indeed, the vast majority of courts that have had an opportunity to address a Fourth Amendment challenge to an automated license plate reader program like the one created by the Act have concluded that the use of readers is not a Fourth Amendment search because the images captured did not violate a reasonable expectation of privacy. *See, e.g.*, *United States v. Porter*, No. 21-cr-00087, 2022 WL 124563, at *3 (N.D. Ill. Jan. 13, 2022); *United States v. Brown*, No. 19-cr-00949, 2021 WL 4963602, at *3 (N.D. Ill. Oct. 26, 2021); *Schmidt v. City of Norfolk*, No. 2:24-cv-621, 2026 WL 207513, at *18 (E.D. Va. Jan. 27, 2026); *United States v. Martin*, 753 F. Supp. 3d 454, 460, 472 (E.D. Va. 2024); *United States v. Toombs*, 671 F. Supp. 3d

1329, 1340-41 (N.D. Ala. 2023); *Commonwealth v. McCarthy*, 142 N.E.3d 1090, 1106 (Mass. 2020).[3]

Plaintiffs identify no reason why this court should reach a different result here. Plaintiffs primarily argue that the use of automated license plate readers violates their expectation of privacy in the "whole of their physical movements," *e.g.*, AT Br. 6 (relying on *Carpenter v. United States*, 585 U.S. 296 (2018)), *id.* at 9-10. In *Carpenter*, the Supreme Court, in a "narrow" decision, held that law enforcement's acquisition of historical cell-site location information from two cell phone providers for periods of seven days and 127 days each infringed on a criminal defendant's "reasonable expectation of privacy in the whole of his physical movements." 585 U.S. at 310 n.3, 313. As the Court explained, this was because cell phone location information "faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id.* at 311. But the Court in *Carpenter* was clear that it was not "express[ing] a view on matters not before [it]: *real-time* [cell-site location

---

[3] Plaintiffs rely on two cases involving the City of Norfolk's automated license plate reader program, AT Br. 14, which, unlike the Act's program, extends into residential areas. *See Schmidt v. City of Norfolk*, No. 2:24-cv-621, 2025 U.S. Dist. LEXIS 21096, at *5 (E.D. Va. Feb. 5, 2025) (denying a motion to dismiss a Fourth Amendment challenge to this program); *Commonwealth v. Bell*, No. CR23001500-00; 01; 02, 2024 WL 5516362, at *4 (Norfolk Cty. Cir. Ct. May 10, 2024) (suppressing evidence obtained using readers that located a vehicle involved in a video game store robbery after a witness provided the license plate number). After the filing of plaintiffs' opening brief, the district court granted summary judgment to the City of Norfolk in *Schmidt*, holding that the city's automated license plate reader program there does not "capture the whole of individuals' movements or even an analogue of the whole." *Schmidt v. City of Norfolk*, No. 2:24-cv-621, 2026 WL 207513, at *18 (E.D. Va. Jan. 27, 2026) (cleaned up).

information.]" 585 U.S. at 316 (emphasis added). Thus, *Carpenter* has no application to the use of automated license plate readers to capture images of license plates; instead, this court should follow the principles set out by *Knotts*. *See Hammond*, 996 F.3d at 389 ("[A]lthough *Carpenter* rejected *Knotts*' reasoning as applied to *historical* [cell-site location information], we agree with the Sixth Circuit that given the opinion's limited holding, *Carpenter* otherwise 'left undisturbed [the Supreme Court's] holding in *Knotts*.'") (quoting *United States v. Trice*, 966 F.3d 506, 518 (6th Cir. 2020)) (emphasis in original); *United States v. Green*, 149 F.4th 733, 747 (D.C. Cir. 2025) (*Carpenter* "left undisturbed the holding in *Knotts*"). In any event, as explained above and in further detail below, *see infra* I.B.2, under the Act, automated license plate readers are installed at stationary points along expressways and highways, and they are designed to capture images of a vehicle's rear license plate only; thus, they do not and cannot collect the exhaustive and "deeply revealing" information about an individual's movements that was at issue in *Carpenter*. 585 U.S. at 320.

Thus, because automated license plate readers capture images of license plates from stationary sites on public expressways and highways only, the State's use of the readers does not constitute a search under the Fourth Amendment.

**B. Any challenge to the possible future retrieval of temporarily stored automated license plate reader images likewise fails.**

The district court correctly held that, insofar as plaintiffs challenged the use of the database to retrieve images collected using automated license plate readers, plaintiffs lacked standing. Doc. 41 at 6-7. But even if plaintiffs had standing, any

such retrieval would not constitute a Fourth Amendment search because it would not implicate a reasonable expectation of privacy.

#### 1. Plaintiffs lack standing to challenge the use of the database to retrieve automated license plate reader images.

At the outset, the district court correctly held that plaintiffs lack standing to challenge the use of the database to retrieve stored images to aid in the investigation of the crimes listed in the Act or to detect expressway hazards. *See* Doc. 41 at 6. To satisfy Article III's standing requirements, a plaintiff must show an injury in fact, a sufficient causal connection between the injury and the conduct complained of, and a likelihood that the injury will be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). To meet the injury-in-fact requirement, a plaintiff must allege an "'actual or imminent, not conjectural or hypothetical'" injury. *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (cleaned up). And when the alleged injury is a future one, as plaintiffs claim here, the injury must be "certainly impending" — that is, there must be "a substantial risk that the harm will occur." *Id.* (cleaned up). Plaintiffs have not met this standard.

The Act provides that images collected by automated license plate readers "may be used by any law enforcement agency conducting an active law enforcement investigation" into certain crimes, as well as to detect expressway hazards and to assist with highway incident management. 605 ILCS 140/5(b). Plaintiffs, however, have not alleged any facts indicating that they could be involved in any such

investigations, and thus they have not alleged facts tending to show a substantial risk that law enforcement will use the database to retrieve images of their license plates. *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), is instructive. There, the Supreme Court held that the plaintiffs, a group of attorneys and human rights organizations, lacked standing to challenge a surveillance statute that, the plaintiffs argued, the government might use in the future to intercept communications between the plaintiffs and their foreign clients. *Id.* at 406, 410. The Court explained that the plaintiffs' alleged future injury — that the government would use the statute to intercept their communications with their clients — would not come to pass absent a "highly attenuated chain of possibilities," including that the government would use that method of surveillance against their clients. *Id.* at 410. The Court expressed "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at 414.

Here, plaintiffs' alleged injury associated with the use of the database rests on a similarly speculative chain of possibilities. Plaintiffs' complaint alleged that "one day," law enforcement may "decide[ ] to target Plaintiffs for specific investigation." Doc. 1 at 9. But it is entirely speculative that plaintiffs will at some point in the future be involved in an investigation relating to expressway safety or into a crime involving a vehicular hijacking, an aggravated vehicular hijacking, terrorism, motor vehicle theft, or a forcible felony, 605 ILCS 140/5(b) — the only crimes for which the Act allows investigators to access the database — and, even then, it is equally speculative that such an investigation would prompt law enforcement to retrieve

images of plaintiffs' license plates from the database. *See Swanigan v. City of Chi.*, 881 F.3d 577, 583 (7th Cir. 2018) (no standing to challenge a detention policy where plaintiff alleged "he *might* be pulled over, arrested, and again subjected to an unconstitutionally long detention" because that is "layered with hypothetical and nowhere near certain") (emphasis in original). Plaintiffs, therefore, did not allege a "realistic danger of sustaining a direct injury as a result of [the use of the database]," *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 473 (7th Cir. 2012), and, as a result, they lack standing to challenge the database's use.

For their part, plaintiffs do not argue that they themselves face a "certainly impending," or "substantial risk" of, harm associated with the use of the database. *See Susan B. Anthony List*, 573 U.S. at 158. Instead, they suggest that any individual who travels on a public thoroughfare where automated license plate readers are installed has standing to challenge the Act. AT Br. 21 ("[T]he fact that the government is violating the rights of *everyone* in Cook County should not protect the government from scrutiny because they've made the violation of rights too ubiquitous to object to.") (emphasis in original). But "a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Rather, to satisfy Article III, plaintiffs needed to allege facts indicating that the injury is "*certainly impending*" and not "merely a *possible* future injury." *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 568 (7th Cir. 2021) (internal quotation marks omitted) (emphasis in original). And

where there are "no facts before [the court] suggesting that [plaintiff] is at imminent risk of being" affected by the challenged conduct, the plaintiff lacks standing. *Prosser v. Becerra*, 2 F.4th 708, 716 (7th Cir. 2021). The district court thus correctly held that plaintiffs lack standing to challenge the use of the database to retrieve stored images captured by automated license plate readers.

### 2. In any event, any retrieval of images from the database would not constitute a Fourth Amendment search.

If this court were to reach the question whether the retrieval of automated license plate reader images from the database for the limited law enforcement purposes contemplated by the Act constitutes a Fourth Amendment search, the court should hold that it does not because such retrieval would not violate a reasonable expectation of privacy.

As an initial matter, however, plaintiffs' opening brief does not argue that the use of the database to retrieve automated license plate reader images violates the Fourth Amendment independent of any violation arising from the use of readers to collect images. *See generally* AT Br. 6-20. Thus, plaintiffs have forfeited any such argument. *See Wedemeyer v. CSX Transportation, Inc.*, 850 F.3d 889, 897 (7th Cir. 2017) (arguments not raised in opening brief are forfeited). And although plaintiffs' complaint asked the district court to enjoin the Act as a whole, *see* Doc. 1 at 10, plaintiffs did not allege that the use of the database to retrieve images collected by automated license plate readers would separately violate the Fourth Amendment, *see id*. 9-10 (complaint's single count, which alleged that use of readers for "tracking of Plaintiffs' movements" violated Fourth Amendment). "Although the plaintiff must

allege only enough facts to state a claim to relief that is plausible on its face, his complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests." *Ollison v. Gossett*, 136 F.4th 729, 737 (7th Cir. 2025) (cleaned up). Here, insofar as plaintiffs are challenging the use of the database, their complaint does not satisfy the fair-notice requirement because although plaintiffs alleged that they may "one day" be the subject of an investigation, Doc. 1 at 9 (¶ 40), they did not indicate that this could give rise to a separate Fourth Amendment violation.

Forfeiture aside, to the extent that plaintiffs challenge the use of the database to retrieve automated license plate reader images violates the Fourth Amendment, their challenge fails on the merits for the same reasons as their challenge to the use of readers to collect images: plaintiffs have no reasonable expectation of privacy in their movements on public thoroughfares. And although the Supreme Court has, in what it described as a "narrow" decision, *Carpenter*, 585 U.S. at 316, held that accessing historical cell-site location information constitutes a Fourth Amendment search, that does not change the outcome here because the type of information at issue is materially different.

Simply put, the concerns that the Supreme Court identified in *Carpenter* regarding historical cell-site location information do not apply to the images captured by automated license plate readers. Indeed, this court has recognized that cell-site location information is unique, and therefore that *Carpenter* should be narrowly applied. *See, e.g., United States v. Soybel*, 13 F.4th 584, 592 (7th Cir. 2021)

(explaining that "the Court in *Carpenter* stressed that its decision was a 'narrow one'"). As the court explained in *Soybel*, cell phones accompany their owners in most instances; thus, "[w]hen the phone is powered on, the result is 'near perfect surveillance.'" *Id.* (quoting *Carpenter*, 585 U.S. at 297)). By contrast, automated license plate readers capture, at most, a vehicle's location while the vehicle is traveling on public expressways and highways, which have many exits leading to many different places. Thus, unlike cell-site location information, the images captured by readers cannot "'provide[ ] an all-encompassing record of [an individual's] whereabouts,' including his entry into 'private residences, doctor's offices, political headquarters, and other potentially revealing locales.'" *Id.* (quoting *Carpenter*, 585 U.S. at 309-312). Moreover, cell phone carriers may retain data for a much longer period of time than the 90 days that Illinois State Police generally retains images captured using automated license place readers — five years, for example, in *Carpenter*. *See* 585 U.S. at 312; *see also Tuggle*, 4 F.4th at 513-529 (no search where surveillance lasted 18 months); *United States v. House*, 120 F.4th 1313, 1318 (7th Cir. 2024) (same for 13 months).

And though the Court in *Carpenter* was concerned with the "retrospective quality" of the cell-site location information because it gave the government "access to a category of information otherwise unknowable," the Court was clear that this concern was due to the fact that access to cell-site location information may allow law enforcement to "retrace a person's whereabouts . . . every moment of every day." 585 U.S. at 312. On that basis, the Court concluded that an individual "maintains a

legitimate expectation of privacy in the record of his physical movements as captured through [cell-site location information]." *Id*. at 310. But, again, access to images captured by automated license plate readers cannot provide an "all-encompassing" record of an individual's movements. *Soybel*, 13 F.4th at 592. On the contrary, because the Act limits the installation of automated license plate readers to public expressways and highways, readers do not and cannot capture or reveal that type of information that was at issue in *Carpenter*. And although plaintiffs argue that the readers' reach is broader than the Act provides because law enforcement may, in theory, access images captured by other networks, *see* AT Br. 17, plaintiffs have not alleged any facts tending to show that they are using roads, beyond those in the Act, where automated license plate readers are being used, much less that those readers could provide "an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." *Carpenter*, 585 U.S. at 311 (cleaned up); *see* Doc. 1 at 1-10.

Because, as the Supreme Court itself recognized, its holding in *Carpenter* was "narrow," 585 U.S. at 316, and limited to the type of technology at issue there, plaintiffs' contention that any reliance on the Court's decisions addressing automobile searches that pre-date *Carpenter* is error, AT Br. 5, is without merit. The Supreme Court did not purport to overrule these earlier decisions. For similar reasons, plaintiffs' reliance on *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021) (*en banc*), AT Br. 11, is misplaced. In that case, the

Fourth Circuit held that accessing data collected by an aerial surveillance program that "track[ed] every movement of every person outside in Baltimore," *Leaders of a Beautiful Struggle*, 2 F.4th at 341, was squarely within the ambit of *Carpenter*. Just like the historical cell-site information in *Carpenter*, the court explained, the challenged program created a "record of where everyone came and went within the city during daylight hours over the prior month-and-a-half." *Id*. By contrast, the automated license plate reader program challenged here collects information only about vehicles traveling near fixed sites on public expressways and highways.

Finally, to the extent that plaintiffs seek to rely on the "mosaic" theory to support their Fourth Amendment claim, that, too, fails. *See* AT Br. 11-12, 17-18. This theory "asks 'whether a set of nonsearches aggregated together amount to a search because their collection and subsequent analysis creates a revealing mosaic.'" *House*, 120 F.4th at 1319 (quoting Orin S. Kerr, *The Mosaic Theory of the Fourth Amendment*, 111 Mich. L. Rev. 311, 320 (2012)). This theory has only "been discussed but [has] not [been] adopted by the Supreme Court." *Id.* As a result, this court has repeatedly declined to rely on it. *Id.*; *Tuggle*, 4 F.4th at 520. But even if the court were to apply the mosaic theory here, the result would be the same: because the whole of the information captured by automated license plate readers could "only depict[ ] one small part of a much larger whole," *Tuggle*, 4 F.4th at 524 — *e.g.*, only the movement of vehicles by fixed sites on public expressways and highways — capturing and retrieving that data to investigate serious crimes or

expressway hazards could not convert a series of "nonsearches" into a search under the Fourth Amendment.

### C. Regardless of whether plaintiffs stated a claim, this court should reject their facial challenge.

In both their complaint and their opening brief on appeal, plaintiffs styled their Fourth Amendment claims as a facial challenge to the Act. *See* Doc. 1 at 10, AT Br. 7. Regardless of whether their Fourth Amendment claims had merit, they cannot show that there is no set of circumstances under which the Act is constitutional. This provides an alternative ground to affirm the dismissal of plaintiffs' complaint. *See Lapre*, 911 F.3d at 430 (court may affirm on any basis supported by record and law); Doc. 23 at 13-14 (defendants' argument in motion to dismiss that plaintiffs cannot show the Act is facially unconstitutional).

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs have made no effort to show that the Act violates the Fourth Amendment in every application. Indeed, plaintiffs conceded in district court that using images collected by automated license place readers to locate a missing person or catch a fleeing suspect would not violate the Fourth Amendment. Doc. 28 at 7 (plaintiffs' acknowledgment that "[a] facial challenge to real-time use *would* therefore face the problem that there are significant uses that are likely constitutional") (emphasis in original).

This concession to one side, plaintiffs have not shown and cannot show that the use of historical information collected by automated license plate readers is unconstitutional in every instance. The Act provides that images may be retrieved to "detect expressway hazards and highway conditions" as well as "to facilitate highway safety and incident management" 605 ILCS 140/5(b) — a use of the images that plaintiffs have not challenged and one that would nevertheless not violate the Fourth Amendment. *See, e.g., Donovan v. Dewey*, 452 U.S. 594, 605 (1981) (warrantless inspections for safety standards did not violate the Fourth Amendment); *Naperville Smart Meter Awareness v. City of Naperville*, 900 F.3d 521, 528 (7th Cir. 2018) (collection of data was for a utility purpose, not a law enforcement purpose, did not violate the Fourth Amendment). And even considering the use of images for the purpose of investigating certain crimes, the readers might capture only a single image of the license plate of a vehicle involved in a serious crime, and law enforcement might access the database to retrieve that single image to aid in its criminal investigation. Indeed, the Ninth Circuit addressed this exact circumstance *United States v. Yang*, 958 F.3d 851 (9th Cir. 2020). As the concurring judge noted, a Fourth Amendment claim predicated on the use of historical information obtained through an automated license plate reader program "falls apart" where the vehicle at issue "had been observed only once." *Id.* at 862 (Bea, J., concurring).

And though plaintiffs asserted in their response to defendants' motion to dismiss that they were also bringing an as-applied challenge, Doc. 28 at 7, they alleged no facts in their complaint that would support such challenge, and they do

not mention an as-applied challenge in their opening brief, *see* AT Br. 7 (discussing only the standard for a facial challenge). Thus, plaintiffs have waived any as-applied challenge. *See United States v. Johnson*, 43 F.4th 771, 784 n.10 (7th Cir. 2022) (party waives or abandons any argument if it is omitted from the opening brief). In any event, "[w]here the claim and the relief that would follow reach beyond the particular circumstances of the plaintiffs, they must satisfy the standards for a facial challenge to the extent of that reach." *Ctr. for Individual Freedom*, 697 F.3d at 475 (cleaned up); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (the "breadth of the remedy employed by the Court" governs the "distinction between facial and as-applied challenges"). In their complaint, plaintiffs sought to enjoin defendants from using existing automated license plate readers as well as from installing future cameras. Doc. 1 at 10. Such relief goes well beyond relief that only affects plaintiffs. And because plaintiffs here cannot meet the high bar of a facial challenge, *see Salerno*, 481 U.S. at 745, this court should affirm the dismissal of plaintiffs' complaint on this alternate ground.

## II. The district court properly dismissed the Governor, the Attorney General, and Illinois State Police because the claims against them are barred by the Eleventh Amendment.

Separately, the district court properly dismissed the Governor, the Attorney General, and Illinois State Police because plaintiffs' claims against them are barred by the Eleventh Amendment, and that bar cannot be overcome by the *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), exception. Doc. 41 at 7-9. The Eleventh Amendment precludes claims against States in federal court without their consent.

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996), *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). State agencies, such as Illinois State Police, are treated the same at the State for the purposes of the Eleventh Amendment. *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012). For that reason, Illinois State Police was properly dismissed from the suit. Doc. 41 at 7-8. Plaintiffs do not argue otherwise in their opening brief. *See generally* AT Br.; *see also Wedemeyer*, 850 F.3d at 897 (arguments not raised in opening brief are forfeited).

And although *Ex Parte Young* created a narrow exception for cases where the plaintiff is seeking declaratory or injunctive relief against a state officer in their official capacity, *Sherwood v. Marchiori*, 76 F.4th 688, 693 (7th Cir. 2023), that state officer must have "'some connection with the enforcement' of an allegedly unconstitutional state statute for the purpose of enjoining that enforcement," *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018) (quoting *Ex Parte Young*, 209 U.S. at 157). Here, as the district court held, neither the Governor nor the Attorney General have any connection to the Act's enforcement. Doc. 41 at 8. On the contrary, the Act directs Illinois State Police, the Illinois Department of Transportation, and the Illinois State Toll Highway Authority to work together to establish an automated license plate reader program. 605 ILCS 140/5(a).

For their part, plaintiffs argue that the *Ex Parte Young* exception applies because the Governor and the Attorney General have "ultimate authority" over the practices of Illinois State Police. AT Br. 23. This, as the district court held, is insufficient to overcome the Eleventh Amendment bar. Doc. 41 at 8; *see also*

*Holcomb*, 883 F.3d at 976 ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute.") (internal quotation marks omitted). Moreover, contrary to plaintiffs' suggestion, *see* AT Br. 23-24, *Holcomb* does not support their position. In *Holcomb*, the plaintiff challenged an Indiana statute governing name changes, which was administered by the Indiana Bureau of Motor Vehicles, and named the State's governor and attorney general as defendants. This court upheld the dismissal of both officials on Eleventh Amendment grounds because the plaintiff had not shown that they were connected with the enforcement of the name-change statute. *Id.* at 976. The court noted, however, that the governor could have been a proper party had the plaintiff asserted a claim against him based on his status as the head of the Bureau of Motor Vehicles and his authority to enforce the Bureau's requirements, which were distinct from the requirements of the name-change statute. *Id.* (citing Ind. Code § 9-24-9-2(1) and 140 Ind. Admin. Code 7-1.1-3(b)(1)(K)). Here, by contrast, the Governor and the Attorney General not only lack any connection to the Act's enforcement, they also are not specifically charged with enforcing any requirement or regulation relating to automated license plate readers. Under these circumstances, the district court correctly held that plaintiffs' claims against them are barred by the Eleventh Amendment.

## III. The district court did not abuse its discretion when it denied plaintiffs' request for a preliminary injunction.

As explained, the district court correctly held that plaintiffs' Fourth Amendment claim with respect to the use of automated license plate readers to

photograph motorists' license plates failed on the merits, *see supra* I.A, and that plaintiffs lacked standing to challenge the use of the database to retrieve stored images, *see supra* I.B.1. This court may also alternatively affirm any challenge to the possible future retrieval of images from the database on the merits, *see supra* I.B.2, or the dismissal of plaintiffs' complaint because they did not bring a proper facial challenge, *see supra* I.C. This court should also affirm the district court's decision to deny plaintiffs' request for a preliminary injunction — which sought to enjoin defendants from using the database, pending resolution of the ligation, Doc. 15 at 1, 13 — on any of these grounds because plaintiffs have not shown a likelihood of success on the merits. However, and contrary to plaintiffs' suggestion, *see* AT Br. 18-20, if this court were to disagree, this court should not address plaintiffs' request for a preliminary injunction but instead should remand for the district court to weigh the preliminary injunction factors in the first instance. *See United States v. Town of Cicero*, 786 F.2d 331, 334 (7th Cir. 1986) (vacating the district court's denial of motion for preliminary injunction and remanding for reconsideration of motion); *Aurora Bancshares Corp. v. Weston*, 777 F.2d 385, 387-88 (7th Cir. 1985) (remanding where the "judge made no findings on the balance of harms from granting or denying a preliminary injunction").

A party seeking a preliminary injunction must show that "(1) absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) its claim has some likelihood of succeeding on the merits." *Valencia v. City of*

*Springfield, Ill.*, 883 F.3d 959, 965 (7th Cir. 2018) (internal quotation marks omitted). If the moving party satisfies each of these requirements, the district court must balance the harm to the moving party if a preliminary injunction is denied against any harm to the nonmoving party if the court were to grant a preliminary injunction. *Id*. This court reviews "the district court's denial of the motion for a preliminary injunction for an abuse of discretion, viewing its legal conclusions *de novo*, and findings of fact for clear error." *Minocqua Brewing Co. v. Hess*, 160 F.4th 849, 851 (7th Cir. 2025).

Because the district court held that plaintiffs both lacked standing to challenge the use of the database (the target of their preliminary injunction) and failed to demonstrate a likelihood of success on the merits on their Fourth Amendment claim generally, the court did not consider whether plaintiffs had shown irreparable harm or whether they had an adequate remedy at law, and the court did not balance the harms. Doc. 41 at 18. Therefore, if this court were to reverse the district court's decision granting defendants' motion to dismiss, the proper remedy would be to vacate the denial of plaintiffs' motion and remand this matter to the district court to reconsider that motion. *See Town of Cicero*, 786 F.2d at 334; *Aurora Bancshares Corp.*, 777 F.2d at 387.

Alternately, this court should affirm the district court's denial of plaintiffs' motion for a preliminary injunction because plaintiffs failed to establish at least two of the required threshold showings and because the balance of harms is not in their favor. To start, plaintiffs failed to show irreparable harm. Indeed, the timing of their

complaint — nearly four years after the Act went into effect — greatly undercuts any claimed harm. *See* Doc. 1; AT Br. 19 (claiming a burden on plaintiffs' "associational and expressive activity"). Likewise, plaintiffs waited three months after filing their complaint to move for a preliminary injunction, again demonstrating a lack of urgency that is inconsistent with irreparable harm. *See* Doc. 15; *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) ("Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered.").

Next, although plaintiffs claim that they have no other legal remedies available to them, this is untrue. Should plaintiffs be charged with any of the crimes listed in the Act, *see* 605 ILCS 140/5(b), they could move to suppress the evidence against them and raise their challenge to the Act at that time, *see, e.g.*, *Porter*, 2022 WL 124563, at *2.

Finally, even if plaintiffs had demonstrated the threshold elements for a preliminary injunction, the harm to them would be greatly outweighed by the harm to the State if this court were to issue a preliminary injunction. Plaintiffs sought to preliminarily enjoin defendants from accessing the database without first obtaining a warrant. Doc. 15 at 13. But such a divergence from current practice would undermine the General Assembly's goal of making Illinois thoroughfares safer. In 2021, shortly after the Act was passed, there were 310 shootings on the expressway, but by 2025 expressway shootings had decreased to 61. Illinois State Police, IL Reported Expressway Shootings (2019-Current Year), https://bit.ly/3N6gbxb (last

accessed Feb. 25, 2026). These statistics suggest that the Act has been successful at achieving its legislative goal.

In short, if this court concludes the district court should not have dismissed plaintiffs' complaint, the court should either remand to the district court to reconsider plaintiffs' preliminary injunction motion or, alternately, deny that motion.

## CONCLUSION

For these reasons, this court should affirm the district court's judgment in favor of defendants-appellees.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendants-Appellees

/s/ Anna W. Gottlieb
**ANNA W. GOTTLIEB**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2234 (office)
(773) 590-7793 (cell)
Anna.Gottieb@ilag.gov

February 25, 2026

**CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Office 365, in 12-point Century SchoolbookBT font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) in that the brief contains 10,107 words.

/s/ Anna W. Gottlieb
ANNA W. GOTTLIEB
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2234 (office)
(773) 590-7793 (cell)
Anna.Gottlieb@ilag.gov

## CERTIFICATE OF FILING AND SERVICE

I certify that on February 25, 2026, I electronically filed the foregoing Brief of Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this case, named below, are registered CM/ECF users and will be served via the CM/ECF system.

Jeffrey Schwab
jschwab@libertyjusticecenter.org

Reilly Stephens
rstephens@libertyjusticecenter.org

/s/ Anna W. Gottlieb
ANNA W. GOTTLIEB
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2234 (office)
(773) 590-7793 (cell)
Anna.Gottlieb@ilag.gov