No. 25-1847

**IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

**STEPHANIE SCHOLL ET AL.,**
*Plaintiffs-Appellants,*

v.

**ILLINOIS STATE POLICE ET AL.,**
*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
CIVIL NO. 1:24-CV-04435

# BRIEF OF THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS-APPELLEES

STANLEY E. WOODWARD, JR.
Associate Attorney General

MICHAEL WEISBUCH
Senior Counsel
Department of Justice
Office of the Associate Attorney General
950 Pennsylvania Ave.,
Washington, D.C. 20530
(202) 322-2450
Michael.Weisbuch@usdoj.gov

*Attorneys for Amicus Curiae the United States*

## Table of Contents

Table of Contents ..................................................................... i
Table of Authorities ..................................................................... ii
Interest of the United States ..................................................................... 1
Statement of the Issue ..................................................................... 5
Summary of Argument ..................................................................... 6
Argument ..................................................................... 7
I. The collection, retention, and use of ALPR data is not a Fourth Amendment search. ..................................................................... 7
II. The Court should not reach Appellants' hyperbolic arguments about future technology ..................................................................... 20
Conclusion ..................................................................... 22
Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type Style Requirements ..................................................................... 24

## Table of Authorities

### Cases

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*,
2 F.4th 330 (4th Cir. 2021) (en banc) .......... 19, 20

*Carpenter v. United States*,
585 U.S. 296 (2018) .......... *passim*

*Chatrie v. United States*,
--- S. Ct. ----, 2026 WL 1855568 (U.S. z 29, 2026) .......... *passim*

*Commonwealth v. Bell*,
2024 WL 5516362 (Va. Cir. Ct. May 10, 2024) .......... 15

*Commonwealth v. Church*,
2025 WL 2908089 (Va. Ct. App. Oct. 14, 2025) .......... 15

*Dow Chemical Co. v. United States*,
476 U.S. 227 (1986) .......... 12, 21

*FCC v. Consumers' Res.*,
606 U.S. 656 (2025) .......... 19

*New York v. Class*,
475 U.S. 106 (1986) .......... 8, 13

*Nw. Airlines, Inc. v. Minn.*,
322 U.S. 292 (1944) .......... 21

*Olabisiomotosho v. Hou.*,
185 F.3d 521 (5th Cir. 1999) .......... 13

*Rinaldi v. Sylvester*,
2025 WL 2682691 (S.D.N.Y. Sept. 19, 2025) .......... 15

*Schemel v. Marco Island Fla.*,
2025 WL 2958798 (M.D. Fla. Oct. 17, 2025) .......... 17

*Schmidt v. Norfolk*,
819 F. Supp. 3d 942 (E.D. Va. 2026) .......... 15

*Scholl v. Illinois State Police*,
776 F. Supp. 3d 701 (N.D. Ill. 2025) .................................................... 16

*United States v. Acosta*,
2025 WL 2427700 (N.D. Okla. Aug. 22, 2025) .................................... 17

*United States v. Bowers*,
2021 WL 4775977 (W.D. Pa. Oct. 11, 2021) ................................. 16, 17

*United States v. Brown*,
2021 WL 4963602 (N.D. Ill. Oct. 26, 2021) ..................................... 3, 17

*United States v. Brown*,
2025 WL 2444596 (W.D. Okla. Aug. 25, 2025) .................................... 17

*United States v. Cooper*,
2025 WL 35035 (E.D. La. Jan. 6, 2025) ............................................. 17

*United States v. Ellison*,
462 F.3d 557 (6th Cir. 2006) .............................................................. 13

*United States v. Floyd*,
811 F. Supp. 3d 1345 (M.D. Fla. Nov. 21, 2025) ................................ 17

*United States v. Graham*,
2022 WL 4132488 (D.N.J. Sep. 12, 2022) ........................................... 17

*United States v. Griffin*,
2025 WL 1474679 (S.D. Ind. May 22, 2025) ....................................... 17

*United States v. Hammond*,
996 F.3d 374 (7th Cir. 2021) .............................................................. 12

*United States v. House*,
120 F.4th 1313 (7th Cir. 2024) .................................................. *passim*

*United States v. Jackson*,
2025 WL 1530574 (D. Kan. May 29, 2025) .......................................... 17

*United States v. James*,
2023 WL 3370421 (W.D. La. Jan. 30, 2023) ....................................... 17

*United States v. Jiles*,
2024 WL 891956 (D. Neb. Feb. 29, 2024) .......... 17

*United States v. Jones*,
565 U.S. 400 (2012) .......... 7, 9, 17, 22

*United States v. Knotts*,
460 U.S. 276 (1983) .......... 8, 10, 12

*United States v. Lawrence*,
2026 WL 765307 (D.N.D. Mar. 18, 2026) .......... 17

*United States v. Martin*,
753 F. Supp. 3d 454 (E.D. Va. 2024) .......... 17, 21

*United States v. Place*,
462 U.S. 696 (1983) .......... 13, 14

*United States v. Porter*,
170 F.4th 381 (5th Cir. 2026) .......... 15

*United States v. Porter*,
2022 WL 124563 (N.D. Ill. Jan. 13, 2022) .......... 17

*United States v. Rubin*,
556 F. Supp. 3d 1123 (N.D. Cal. 2021) .......... 17

*United States v. Salcido-Gonzalez*,
2024 WL 2305478 (D. Utah May 21, 2024) .......... 17

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) .......... 9

*United States v. Sturdivant*,
786 F. Supp. 3d 1098 (N.D. Ohio 2025) .......... 17

*United States v. Toombs*,
671 F. Supp. 3d 1329 (N.D. Ala. 2023) .......... 17

*United States v. Tuggle*,
4 F.4th 505 (7th Cir. 2021) .......... 9

*United States v. Wilcox*,
415 F. App'x 990 (11th Cir. 2011) ........ 13

*United States v. Yang*,
958 F.3d 851 (9th Cir. 2020) ........ 16, 18, 22

**Other Authorities**

605 ILL. COMP. STAT. 140 ........ 2

*Bureau of Justice Statistics*,
*Federal Law Enforcement Office,* 2023 – *Statistical Tables* ........ 1

Doug Wolfe, *Flock cameras used in solving federal gun case*, WAND News (Aug. 25, 2023) ........ 4

Illinois State Police, *Automated License Plate Reader – Transparency Page* (June 20, 2026) ........ 3

KHQA, *Macomb kidnapping suspect captured by U.S. Marshals after month-long manhunt* (Apr. 23, 2025) ........ 5

U.S. CONST. AMEND. IV ........ 8

WBAY News Staff, *Oshkosh man receives 15 years in federal prison for Kwik Trip robbery*, WBAY News (Apr. 30, 2026) ........ 4

**Interest of the United States**

The United States employs nearly 134,000 law enforcement officers nationwide, the vast majority of whom protect public safety and national security through the investigation of criminal acts and prosecution of putative offenders.[1] While investigating federal offenses, these law enforcement officers frequently partner and share information with State and local law enforcement agencies.

In this case, Appellants challenge the use of a technology that exemplifies how law enforcement agencies can work together to keep Americans safe while respecting constitutional rights. Over 5,000 communities in 49 states have installed Automatic License Plate Reader (ALPR) cameras to varying degrees. And, thanks to the cooperation of these State and local partners, ALPR technology has become one of the most crucial investigative tools at the United States' disposal. Officers across federal agencies regularly extol the benefits of ALPR technology in deterring criminal conduct and aiding investigations so that violent predators are taken off America's streets and out of its communities.

---

[1] *See Bureau of Justice Statistics*, *Federal Law Enforcement Officers,* 2023 – *Statistical Tables* (May 19, 2026), https://bjs.ojp.gov/document/fleo23st.pdf [https://perma.cc/NL9N-GB9N].

Although extremely useful, ALPR program data is also limited in various ways. Like toll cameras and red-light safety cameras, ALPR cameras capture images of passing license plates. Time-stamped records are uploaded to a central repository that can be accessed by law enforcement when there is an investigatory need. The cameras cannot see inside vehicles, physical structures (such as houses, garages, or businesses), or the curtilage of such places. They do not record pedestrians, but may capture the immediate background area surrounding the vehicle.

State laws also often restrict the use of ALPR systems. In Illinois, a law enforcement officer may extract ALPR images only to "investigat[e] . . . any offenses involving vehicular hijacking, aggravated vehicular hijacking, terrorism, motor vehicle theft, and forcible felony, . . . to detect expressway hazards and highway conditions," "and to facilitate highway safety and incident management."[2] Illinois requires that "[a]ll images from the cameras shall be deleted" from the database "within 120 days, unless the images are relevant to an ongoing investigation or pending

[2] 605 ILL. COMP. STAT. 140/5(b) (2019).

criminal trial." *Id.* In reality, the images are stored for 90 days.[3]

Despite such restrictions and the limited nature of the data, ALPR technology has played a crucial role in countless criminal investigations. Indeed, ALPR technology comes at an important time for the United States. Federal law enforcement officers (and the state and local officers with whom they proudly partner) are confronting widespread criminal gang activity, including activity connected with transnational criminal organizations (such as cartels) that prey on American communities. And as a general matter, law enforcement officers frequently confront a wide range of crimes where even basic information about a vehicle's location can provide critical evidence.

Consider several examples from this Circuit. Law enforcement officers used ALPR technology to identify a suspect who robbed four Illinois banks. *See United States v. Brown*, 2021 WL 4963602, at *1-2 (N.D. Ill. Oct. 26, 2021). And in 2023, Taylorville police used ALPR technology to track down and arrest four suspects involved in a

---

[3] *See* Appellants' Opening Br. 2, 13; Illinois State Police, *Automated License Plate Reader – Transparency Page* (June 20, 2026), https://isp.illinois.gov/CriminalInvestigations/TransparencyPage [https://perma.cc/EG4E-EQSQ].

conspiracy to break into six gun shops across the region.[4] Similarly, in April 2026, the Winnebago County Sheriff's Office used ALPR technology to locate and arrest a suspect after he robbed a convenience store at gunpoint.[5]

ALPR technology can also be used to thwart crime in progress and prevent more tragic outcomes. It often aids investigations regarding missing persons and abducted children in particular. For instance, in March 2025, a man abducted his ex-girlfriend's three-year-old child in Macomb, Illinois. Law enforcement used ALPR technology to track the suspect's vehicle to Chicago, where the child was found safe at a residence. The suspect fled the scene but was later apprehended by United States Marshals.[6]

---

[4] Doug Wolfe, *Flock cameras used in solving federal gun case*, WAND News (Aug. 25, 2023), https://www.wandtv.com/news/flock-cameras-used-in-solving-federal-gun-case/article_a71f87c4-4387-11ee-84f8-93296114d7bd.html [https://perma.cc/RW4H-5PYK].

[5] WBAY News Staff, *Oshkosh man receives 15 years in federal prison for Kwik Trip robbery*, WBAY News (Apr. 30, 2026), https://www.wbay.com/2026/04/30/oshkosh-man-receives-15-years-federal-prison-kwik-trip-robbery/ [https://perma.cc/C5W2-YFQF].

[6] *See* KHQA, *Macomb kidnapping suspect captured by U.S. Marshals after month-long manhunt* (Apr. 23, 2025), https://www.khqa.com/news/archive/macomb-kidnapping-suspect-captured-by-u-s-marshals-after-month-long-manhunt/article_a26b9ce7-a7e0-5b73-a171-4d2b27b09758.html [https://perma.cc/5ML6-C8DM].

As many examples from across the country and this circuit make clear, ALPR data plays a critically important role in keeping Americans safe, catching criminals, and honoring victims. Appellants nevertheless challenge the State of Illinois' use of ALPR technology. The district court, in line with the judicial consensus across the country, rejected Appellants' challenge.

The United States has a strong interest in defending the State's practice and the district court's ruling while promoting a proper understanding of the Fourth Amendment. The United States thus submits this brief to offer its perspective on the importance and legality of the collection, retention, and use of ALPR data—and to ensure that State and local law enforcement agencies continue to have the choice to employ ALPR to protect their communities.

## Statement of the Issue

Whether the State's collection, retention, and use of ALPR data captured by cameras constitutes a search under the Fourth Amendment.[7]

---

[7] Given that the United States' interest in this appeal is limited to defending the use of ALPR technology generally and on the merits, the United States takes no position on any Article III standing issues or other ancillary issues. The United States assumes for the sake of argument that both the collection and access of ALPR data are at issue. There is

## Summary of Argument

I. The State's collection and use of ALPR data is clearly not a Fourth Amendment search. Among other reasons, the State's ALPR cameras capture only limited, public location information. No one can drive on public roads and reasonably expect their license plate—the entire purpose of which is to identify vehicles to law enforcement officers and other government entities—to remain private.

Appellants' contrary arguments misunderstand the Supreme Court's Fourth Amendment jurisprudence. To be sure, the Supreme Court has held "that individuals have a reasonable expectation of privacy in the whole of their physical movements." *Carpenter v. United States*, 585 U.S. 296, 310 (2018). But Appellants cannot stretch that holding to encompass the State's use of ALPR technology, which does not capture the whole of their physical movements.

II. Hyperbolic statements about surveillance systems not actually in use today (let alone at issue in this case) are not a basis to invalidate

no Fourth Amendment violation regardless. *See* S.A. 16 (reaching the same conclusion "[e]ven assuming . . . the same reasoning" applies "to the collection of data" and "the government's access of already-collected data").

the State's ALPR program. Courts should address future technological developments when, if ever, they arise.

## Argument

### I. The collection, retention, and use of ALPR data is not a Fourth Amendment search.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. A Fourth Amendment search occurs when the government violates "certain expectations of privacy . . . that society is prepared to recognize as reasonable." *Carpenter*, 585 U.S. at 304 (internal quotation marks omitted).[8] For all the reasons the State explains in its response brief, the State's collection, retention, and use of ALPR data does not violate any reasonable expectation of privacy and is therefore not a Fourth Amendment search.

There is a "lesser expectation of privacy in a motor vehicle" to the extent a vehicle "has little capacity for escaping public scrutiny" while it

[8] A search under the Fourth Amendment can also result from "trespass upon the areas ('persons, houses, papers, and effects') it enumerates." *United States v. Jones*, 565 U.S. 400, 406 (2012). Appellants do not (and could not) argue that the use of ALPR technology is a common-law trespass. *See* S.A. 10.

"travels public thoroughfares . . . in plain view." *New York v. Class*, 475 U.S. 106, 112–113 (1986). So, as a general matter, there is "no … expectation of privacy" that "extend[s] to visual observation of [an] automobile" when "[v]isual surveillance from public places . . . would have sufficed to reveal all" the same information to the government. *United States v. Knotts*, 460 U.S. 276, 282 (1983). The Supreme Court thus upheld the use of a beeper that enabled law enforcement officers to follow the movements of an entire "automotive journey." *Id.* at 285. That police have "augment[ed] the sensory facilities bestowed upon them at birth with such enhancement as science and technology afforded them in this case" does not render their actions unconstitutional. *See id.* at 287. "[T]he government does not invade an expectation of privacy that society is prepared to accept as reasonable when the government uses a common technology, located where officers are lawfully entitled to be, and captures events observable to passerby." *United States v. House*, 120 F.4th 1313, 1318 (7th Cir. 2024).

Appellants' principal Supreme Court authority, *Carpenter*, and the Court's recent decision in *Chatrie v. United States*, --- S. Ct. ----, 2026 WL 1855568 (2026), are inapposite. "[T]he Court in *Carpenter* stressed that

its decision was a 'narrow one.'" *United States v. Soybel*, 13 F.4th 584, 592 (7th Cir. 2021) (quoting *Carpenter*, 585 U.S. at 316); *see also United States v. Tuggle*, 4 F.4th 505, 525 (7th Cir. 2021) ("*Carpenter* should be read narrowly . . . ."). It held that, in certain narrow circumstances, the government performs a Fourth Amendment search when it uses technology (for an extended period of time) that "provides an all-encompassing record of [a person's] whereabouts," including "beyond public thoroughfares," and thus "provides an intimate window into a person's life." *Carpenter*, 585 U.S. at 311 (discussing "historical cell-site records" used to "map[] a cell phone's location"). Similarly, in *Jones*, a majority agreed that "long[] term GPS monitoring [of a vehicle]" constitutes a search. 565 U.S. at 430 (opinion of Alito, J.); *see id.* at 415 (opinion of Sotomayor, J.).

*Chatrie* addressed similar facts as *Carpenter*, with a few twists. Instead of addressing cell-site location information (CSLI), it addressed "even more fine-tuned" cell phone "Location History." 2026 WL 1855568, at *11. And instead of addressing the government's access of seven days of CSLI data, the Court addressed the government's access of two hours of Location History. *See id.* at *12, 14. But the

"resemblances between CSLI and Location History, in their relationship to personal privacy, practically leap off the page." *Id.* at *11. Both provide "near perfect surveillance of an individual holding a cell phone." *Id.* (internal quotation marks omitted). Both could thus enable the government to "perform the 'tireless and absolute surveillance' of any number of people in any number of places, public and private." *Id.* (quoting *Jones*, 565 U.S. at 430) (Alito, J., concurring). So both triggered "the Fourth Amendment's concern about a too permeating police surveillance." *Id.* at *13 (internal quotation marks omitted). "What creates that concern is that the government can access all of a cell-phone user's movements, in both public and private places—that it possesses a virtual panopticon with which to scrutinize its own citizens' activities." *Id.*

Such circumstances are not present here—not even close. The collection, retention, and use of ALPR data (which is limited to license plates on public streets) results from precisely the sort of "augmented visual surveillance" of vehicles "on public thoroughfares" that the Supreme Court has confirmed is *not* a search. *Carpenter*, 585 U.S. at 306 (quoting *Knotts*, 460 U.S. at 281). Indeed, *Chatrie* emphasized that

"the movements that Location History reveals are not limited to public streets," while reaffirming that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy . . . because the car is always in plain view." *Id.* at *14. And *Chatrie* indicated that its reasoning and conclusion would not apply to "public-movements-only technology" or technology that "ensure[s] a less comprehensive log than in *Carpenter*." *Id.* at *14 n.10.

The State's ALPR program both reaches only certain public movements and creates a far less detailed log of movements. Indeed, it results in only limited snapshots. The ALPR program consists of cameras that are all located on public roadways and primarily located on major thoroughfares, *i.e.*, expressways and tollways (often in high violent crime areas).[9] Vehicle license plates will thus be photographed in the sorts of locations where drivers should have every expectation of observation, not privacy. And the fact there are "hundreds of cameras" does not change that. Appellants' Opening Br. 16. Of course, law

---

[9] Illinois State Police, *Automated License Plate Reader – Transparency Page*, n.3, *supra*; *see also* Appellants' Opening Br. 10 (asserting that "traveling in a car *on highways* is an indispensable feature of contemporary life" (emphasis added)).

enforcement agents can sometimes draw additional inferences from the data that those cameras collect. But because ALPR "photographs . . . are not so revealing of intimate details, . . . [t]he mere fact that human vision is enhanced somewhat . . . does not give rise to constitutional problems." *Dow Chemical Co. v. United States*, 476 U.S. 227, 238 (1986).

Thus, if the question is "whether the facts of this case are more similar to *Carpenter* or *Knotts*," S.A. 12 (quoting *United States v. Hammond*, 996 F.3d 374, 389 (7th Cir. 2021)), or now whether the facts are more similar to *Chatrie* or *Knotts*, the answer is easy. The State's ALPR cameras do not "capture[] . . . the full record of [Plaintiffs] whereabouts." *House*, 120 F.4th at 1320. As the district court put it, "[k]nowing what portions of an expressway someone passes tells the government far less about the privacies of life than data that tracks nearly exactly the movements of a cellphone's owner." S.A. 17 (internal citations, quotation marks, and alterations omitted). The State's ALPR cameras do not "follow [a vehicle's] owner beyond public thoroughfares" or "continuously reveal[]" a vehicle's specific location, let alone "secretly monitor and catalogue every single movement of an individual's car."

*Carpenter*, 585 U.S. at 309, 310, 311 (internal quotation marks omitted).

To the contrary, ALPR collection is almost "*sui generis*" as an "investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed." *United States v. Place*, 462 U.S. 696, 707 (1983) (addressing canine sniff). An ALPR photograph is "much less intrusive than a typical search" because it discloses "only the presence or absence" of a license plate at a particular public location. *Id.*

The content of that information is far from private or intimate; "[t]he very purpose of a license plate number … is to provide identifying information to law enforcement officials and others." *United States v. Ellison*, 462 F.3d 557, 561 (6th Cir. 2006); *accord Olabisiomotosho v. Hou.*, 185 F.3d 521, 529 (5th Cir. 1999) (license plate numbers are "constantly open to the plain view of passersby"). "[I]t is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile." *Class*, 475 U.S. at 114; *accord United States v. Wilcox*, 415 F. App'x 990, 992 (11th Cir. 2011) (there is no "reasonable expectation of privacy in [a] plainly visible license plate"). And ALPR cameras do not incidentally

"expose . . . items that would [otherwise] remain hidden from public view." *Place*, 462 U.S. at 707.

Appellants, "of course, are concerned less with the license plates themselves and more with what the ALPR data reveals about their movements." S.A. 11. But the point is that the State's ALPR cameras operate only in places where license plates are supposed to identify drivers anyway. Americans have long been accustomed to toll and red-light cameras capturing their license plates at particular locations (and dreading the bill or ticket in the mail that follows). *Cf. House*, 120 F.4th at 1318 (a pole camera "is a technology in general public use that does not offend the Fourth Amendment"). So the State's ALPR cameras do not collect, or lead to government access of, information that a driver "reasonably views as his own" (or otherwise private). *Chatrie*, 2026 WL 1855568, at *12.[10] While "[a] cell-phone user is not to be viewed as sharing private information . . . which then can be freely passed on to the government . . . just by doing the ordinary things cell-phone users do," *id.*

---

[10] *See also Chatrie*, 2026 WL 1855568, at *22 (Gorsuch, J., concurring in the judgment) ("Why is the Court so protective of Location History data, email, and electronically stored photos and calendars? Because, it turns out, a user reasonably understands all those things as his own." (internal citations and quotation marks omitted)).

at *16, in American society a driver on public roads *is* viewed as sharing *public* information which can be freely accessed by the government.

Unsurprisingly, then, courts across the country have roundly rejected Appellants' capacious understanding of what constitutes a search. The Fifth Circuit recently held that "the use of an [A]LPR system did not invade any reasonable expectation of privacy and did not constitute a search." *United States v. Porter*, 170 F.4th 381, 386 (5th Cir. 2026). Indeed, "nearly every court" that has addressed the issue "has held that queries of [A]LPR databases do *not* constitute Fourth Amendment searches." *Rinaldi v. Sylvester*, 2025 WL 2682691, at *17 & n.13 (S.D.N.Y. Sept. 19, 2025).[11] Those courts have recognized,

[11] The phrase "nearly every" is arguably not strong enough. *See also* S.A. 17 ("nearly uniform consensus"). To the United States' knowledge, no federal court has held that an ALPR system violates a reasonable expectation of privacy. Some courts have let cases get past the motion-to-dismiss stage before upholding ALPR systems. *See* Appellants' Opening Br. 14 (citing motion-to-dismiss stage opinion before the court granted the defendant summary judgment in *Schmidt v. Norfolk*, 819 F. Supp. 3d 942 (E.D. Va. 2026)). But here, it is utterly implausible that the State's alleged use of ALPR cameras captures the whole of Appellants' movements. To the extent Appellants cite a single State trial court order as supporting their theory, *see Commonwealth v. Bell*, 2024 WL 5516362 (Va. Cir. Ct. May 10, 2024), the Virginia Court of Appeals subsequently held that the use of an ALPR system "did not violate any reasonable expectation of privacy," *Commonwealth v. Church*, 2025 WL 2908089, at *3-4 (Va. Ct. App. Oct. 14, 2025).

contrary to Appellants' mischaracterization, that ALPR technology simply does not uncover the whole of an individual's movements; it "records a vehicle's location only when it passes" a camera. S.A. 17. ALPR "technology is more akin to the conventional surveillance methods, such as security cameras, that the *Carpenter* Court was careful not to call into question." *United States v. Bowers*, 2021 WL 4775977, at *3 (W.D. Pa. Oct. 11, 2021).

Courts have not only upheld the use of ALPR technology; many have found that the use of such technology is not even close to a Fourth Amendment search. Whereas *Chatrie* built on *Carpenter*'s holding that "an individual has a legitimate expectation of privacy in . . . his cell phone's—meaning his own—movements," 2026 WL 1855568, at *9, a concurring Ninth Circuit opinion characterized the argument that ALPR databases provide "the same degree of information" at issue in *Carpenter* as "fall[ing] apart under the barest of scrutiny," *United States v. Yang*, 958 F.3d 851, 862 (9th Cir. 2020) (Bea, J., concurring). ALPR information is not "remotely comparable to the 'detailed, encyclopedic' information at issue in *Carpenter*." *United States v. Rubin*, 556 F. Supp. 3d 1123, 1130 (N.D. Cal. 2021) (Breyer, J.). "Even in the aggregate, the

ALPR cameras['] capability to capture multiple shots of a single vehicle and/or store historical data does not approach the near-constant surveillance of cell-phone users' public and private moves that so concerned the Court in *Carpenter*." *Bowers*, 2021 WL 4775977, at *3.[12]

Because the data being aggregated is far less detailed than the data at issue in *Jones*, *Carpenter*, and *Chatrie*, the aggregated results are also far less detailed. In *Carpenter* and *Chatrie*, suspects had "effectively been tailed every moment of every day." *Chatrie*, 2026 WL 1855568, at *11 (quoting *Carpenter*, 585 U.S. at 312); *see also id.* at *11 (Location

---

[12] *See also, e.g., United States v. Lawrence*, 2026 WL 765307, at *1 (D.N.D. Mar. 18, 2026); *United States v. Floyd*, 811 F. Supp. 3d 1345, 1345-50 (M.D. Fla. Nov. 21, 2025); *Schemel v. Marco Island Fla.*, 2025 WL 2958798, at *2 (M.D. Fla. Oct. 17, 2025); *United States v. Brown*, 2025 WL 2444596, at *3-5 (W.D. Okla. Aug. 25, 2025); *United States v. Acosta*, 2025 WL 2427700, at *4-6 (N.D. Okla. Aug. 22, 2025); *United States v. Sturdivant*, 786 F. Supp. 3d 1098, 1107-14 (N.D. Ohio 2025); *United States v. Jackson*, 2025 WL 1530574, at *5-10 (D. Kan. May 29, 2025); *United States v. Griffin*, 2025 WL 1474679, at *8-9 (S.D. Ind. May 22, 2025); *United States v. Cooper*, 2025 WL 35035, at *4-7 (E.D. La. Jan. 6, 2025); *United States v. Martin*, 753 F. Supp. 3d 454, 468-76 (E.D. Va. 2024); *United States v. Salcido-Gonzalez*, 2024 WL 2305478, at *11-12 (D. Utah May 21, 2024); *United States v. Jiles*, 2024 WL 891956, *16-19 (D. Neb. Feb. 29, 2024); *United States v. Toombs*, 671 F. Supp. 3d 1329, 1339-42 (N.D. Ala. 2023); *United States v. James*, 2023 WL 3370421, at *4-6 (W.D. La. Jan. 30, 2023); *United States v. Graham*, 2022 WL 4132488, at *4-5 (D.N.J. Sep. 12, 2022); *United States v. Porter*, 2022 WL 124563, at *2-3 (N.D. Ill. Jan. 13, 2022); *Brown*, 2021 WL 4963602, at *1-4.

History contained a daily average of 720 data points); *Yang*, 958 F.3d at 863 (Bea, J., concurring) (contrasting the more than 100 data points per day that the CSLI data in *Carpenter* revealed with ALPR data). *Chatrie* confirmed the Supreme Court's concerns about "historical cell phone records that provide a comprehensive chronicle of the user's past movements." 2026 WL 1855568, at *9 (quoting *Carpenter*, 585 U.S. at 300). But such "tireless and absolute surveillance" is simply not at issue here. *Id.* at *11. Accordingly, although this Court has declined to affirmatively "accept[] the mosaic theory" of the Fourth Amendment—that the "government can learn more from a given slice of information if it can put that information in the context of a broader pattern"—such a theory would not change the outcome here anyway. *Tuggle*, 4 F.4th at 524; *see also House*, 120 F.4th at 1318-1322 (declining to endorse mosaic theory while explaining that pole camera surveillance is not analogous to the technology employed in *Carpenter*).[13]

[13] To be clear, any broad application of a theory that "even if no single act of surveillance constitutes a search, the aggregation of information obtained through the surveillance program may constitute a search," S.A. 12, would be extremely problematic. For one thing, the entire point of a (lawful) investigation is to piece together information to gain a detailed understanding of what happened. For another, the Supreme Court has rejected such "combination theor[ies]—that a

Of the dozens of federal decisions addressing the issue, Appellants have not identified a single holding that the use of ALPR technology constitutes a search. Appellants are left to emphasize *Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021) (en banc). But that decision is both non-binding and easily distinguishable. The Fourth Circuit addressed aerial cameras that provided "twelve hours of coverage of around 90% of the State each day, weather permitting." *Id.* at 334. Whether or not such technology "invades the reasonable expectation of privacy that individuals have in the whole of their movements," *id.* at 341; *but see id.* at 353 (Wilkinson, J., dissenting) ("[D]ecades of Supreme Court precedent mak[es] clear that limited aerial surveillance like that in this case does not violate a reasonable expectation of privacy[.]"), the sort of ALPR program at issue here plainly does not. As the Fourth Circuit recognized, "[p]eople understand that they may be filmed by security cameras on city streets." *Id.* at 345; *see also House*, 120 F.4th at 1318 ("[L]aw enforcement's use of cameras to assist investigations has been repeatedly approved.").

constitutional non-violation plus a constitutional non-violation may equal a constitutional violation." *FCC v. Consumers' Res.*, 606 U.S. 656, 696 (2025).

*Leaders of a Beautiful Struggle* only confirms there is no Fourth Amendment violation here.

### II. The Court should not reach Appellants' hyperbolic arguments about future technology.

Appellants' hyperbolic rhetoric should not color this Court's view of the law. Appellants refer to the State's modest ALPR program as a "mass surveillance system" that "track[s] the movements of Plaintiffs—and anyone else in Cook County who drives a car or truck—everywhere they go." Appellants' Opening Br. 4; *see also id.* at 6-7 (asserting without explanation that the State's ALPR program tracks "Plaintiffs' movements everywhere they drive," and describing the program as "comprehensive tracking of every innocent citizen's movements"); Appellants' Reply Br. 3 ("[T]he government is tracking them everywhere they go . . . to make a comprehensive record of Plaintiffs' movements—and the movement of every resident of Cook County, and over time the entire state of Illinois."). These mischaracterizations appear rooted less in present reality than in a desire to shoehorn Appellants' allegations into *Carpenter*'s (and now *Chatrie*'s) reasoning, or in fears about the hypothetical deployment of future technology.

"Fourth Amendment cases must be decided on the facts of each case, not by extravagant generalizations." *Dow Chemical Co.*, 476 U.S. at 238 n.5. Of course, the Supreme Court has instructed courts to "take account of more sophisticated systems that are already in use or in development." *Carpenter*, 585 U.S. at 313. But at the same time, the Supreme Court cautioned that "when considering new innovations," courts should "tread carefully … to ensure that we do not 'embarrass the future.'" *Id.* at 316 (quoting *Nw. Airlines, Inc. v. Minn.*, 322 U.S. 292, 300 (1944)). In other words, the Supreme Court would consider technological "capability" at the time the Court issued its decision. *Id.* at 313. But the Court would not "express a view on matters not before [it]," including "manifold situations that may be presented by . . . new technology" that might later emerge (or not). *Id.* at 316 & n.4; *see also Martin*, 753 F. Supp. 3d at 473 n.16 ("These cases require courts to consider the facts of the cases at hand to determine whether warrantless access to that technology and data violates individuals' reasonable expectations of privacy—not whether it will do so in the future.").

Here, it would be imprudent to hypothesize about future developments involving ALPR or similar programs. Whether

"technology advances as [Appellants] believe it will" is no basis for a decision, particularly when there is not "even one case where the 'whole of [one's] physical movements' was implicated in an ALPR database search." *Yang*, 958 F.3d at 864 (Bea, J., concurring) (quoting *Carpenter*, 585 U.S. at 310). Opining on such future technology without concrete information or full briefing is more likely to sow confusion than promote clarity. How ALPR or similar technology might work in the future—both in terms of the data collected and the privacy safeguards involved—is unpredictable. It is enough to acknowledge, as *Carpenter*, *Jones*, and *Chatrie* confirm, that courts are more than capable of addressing whether and how the Fourth Amendment applies to new technology when such technology is actually in use.

## Conclusion

The United States urges that this Court affirm the judgment of the district court.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

*s/ Michael Weisbuch*
MICHAEL WEISBUCH
Senior Counsel
Department of Justice
Office of the Associate Attorney General
950 Pennsylvania Ave.,
Washington, D.C. 20530
(202) 322-2450
Michael.Weisbuch@usdoj.gov

*Attorneys for Amicus Curiae the United States*

**Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type Style Requirements**

I hereby certify that this brief complies with the typeface and type style requirements of Rules 29, 32(a)(5), and 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in proportionally spaced typeface using Microsoft Word, in 14-point Century Schoolbook font, and complies with Circuit Rule 29 in that the brief contains 4,589 words.

*s/ Michael Weisbuch*
MICHAEL WEISBUCH
Senior Counsel
Department of Justice
Office of the Associate Attorney General
950 Pennsylvania Ave.,
Washington, D.C. 20530
(202) 322-2450
Michael.Weisbuch@usdoj.gov

*Attorney for Amicus Curiae the United States*

## Certificate of Filing and Service

I certify that on June 30, 2026, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system, which will send notification of filing to all counsel of record.

*s/ Michael Weisbuch*
MICHAEL WEISBUCH
Senior Counsel
Department of Justice
Office of the Associate Attorney General
950 Pennsylvania Ave.,
Washington, D.C. 20530
(202) 322-2450
Michael.Weisbuch@usdoj.gov

*Attorney for Amicus Curiae the United States*