No. 25-1847

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

STEPHANIE SCHOLL and FRANK BEDNARZ,

Plaintiffs-Appellants,

v.

ILLINOIS STATE POLICE; BRENDAN F. KELLY, *in his official capacity as Director of the Illinois State Police*; JAY ROBERT PRITZKER*, in his official capacity as Governor of the State of Illinois*; KWAME RAOUL*, in his official capacity as Attorney General of Illinois*,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Northern District of Illinois
No. 1:24-cv-4435
Honorable Martha M. Pacold

---

**Appellants' Supplemental Brief**

---

Reilly Stephens
Jeffrey M. Schwab
Meredith Pettman
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
rstephens@ljc.org

*Attorneys for Plaintiffs-Appellants*

TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 1

I. The collection and retrospective quality of ALPR data constitute a search because they give police unprecedented access to information for which there exists a reasonable expectation of privacy. ........ 1

a. Carpenter and Chatrie secure the privacies of life against arbitrary power and unregulated surveillance. ........ 2

b. The Government misses the mark with the cases it presents in support of its argument ........ 5

II. The Government mischaracterizes the standard by which this Court addresses the facts upon review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). ........ 6

CONCLUSION ........ 9

CERTIFICATE OF COMPLIANCE ........ 11

CERTIFICATE OF SERVICE ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Boyd v. United States*, 116 U.S. 616 (1886) .......... 2

*Carpenter v. United States*, 585 U.S. 296 (2018) .......... passim

*Chatrie v. United States*, 609 U.S. ___ (2026) .......... passim

*Dow Chem. Co. v. United States*, 476 U.S. 227 (1986) .......... 9

*Kyllo v. United States*, 533 U.S. 27 (2001) .......... 4

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008) .......... 7

*United States v. Di Re*, 332 U.S. 581 (1948) .......... 2

*United States v. Jones*, 565 U.S. 400 (2012) .......... 3

*United States v. Lurry*, No. 2:09-cr-20312-JPM, 2010 U.S. Dist. LEXIS 118456 (W.D. Tenn. Nov. 8, 2010) .......... 8

*United States v. Porter*, 170 F.4th 381 (5th Cir. 2026) .......... 6

*United States v. Yang*, 958 F.3d 851 (9th Cir. 2020) .......... 6

## STATUTES

605 ILCS 140/5 .......... 4

## RULES

Fed. R. App. P. 32 .......... 11

Fed. R. Civ. P. 12(b)(6) .......... 6, 7

7th Cir. R. 32 .......... 11

## OTHER AUTHORITIES

Brief of the United States as Amicus Curiae in Support of Defendants-Appellees,

*Scholl v. Ill. State Police*, No. 25-1847 (7th Cir. filed July 6, 2026) .......... 7

## Summary of Argument

The Government's position reduces to a single proposition: because a car is visible on a public road, the Fourth Amendment has nothing to say about a system that tracks every car passing by, and permits police to search that history at will and without a warrant. *Carpenter* and *Chatrie* foreclose that reasoning. Neither decision turned on whether the observed conduct occurred in public. Rather, both turned on the guideposts the Supreme Court has applied for more than a century: that the Fourth Amendment secures the privacies of life against arbitrary power, and that it places obstacles in the way of a too permeating police surveillance.

The ALPR program at issue is a search. Its collection is indiscriminate, sweeping in every vehicle that passes rather than only those as to which police have any suspicion. Its record is retrospective, giving police the power to travel back in time and reconstruct where a driver has been, which was previously unknowable. The Government's answer is that ALPR data points are less granular than cell-site location information. But *Carpenter* already rejected the premise that inference insulates a search, and *Chatrie* confirmed that a search does not cease to be one because the government gathers less than it might have.

## ARGUMENT

### I. The collection and retrospective quality of ALPR data constitute a search because they give police unprecedented access to information for which there exists a reasonable expectation of privacy.

The Government's argument that there is no reasonable expectation of privacy in a person's vehicular movements relies heavily on its interpretation of two Fourth

Amendment cases: *Carpenter v. United States*, 585 U.S. 296 (2018) and the recent decision in *Chatrie v. United States*, 609 U.S. ___ (2026). But the Government misses the mark on both counts.

**a. *Carpenter* and *Chatrie* secure the privacies of life against arbitrary power and unregulated surveillance.**

In both *Carpenter* and *Chatrie*, the Court made note that its Fourth Amendment jurisprudence recognizes "some basic guideposts. First, that the Amendment seeks to secure 'the privacies of life' against 'arbitrary power.'" *Carpenter*, 585 U.S. at 305 (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)). "So too we have recognized, and repeatedly, that the Amendment was designed 'to place obstacles in the way of a too permeating police surveillance.'" *Chatrie,* 609 U.S. at ___ (slip op., at 12) (quoting *United States v. Di Re*, 332 U.S. 581, 595 (1948)). The question then before the Court in *Carpenter* was "how to apply the Fourth Amendment to a new phenomenon: the ability to chronicle a person's past movements through the record of his cell phone signals." *Id.* at 309. The Court in *Chatrie* doubled down on *Carpenter*, identifying significant "resemblances" between the two types of cell phone records, CSLI and Location History, at issue in the respective cases. *Chatrie*, 609 U.S. at ___ (slip op., at 16). The Court in *Chatrie* even went so far as to say that "[e]verything *Carpenter* relied on" to find law enforcement violated Carpenter's reasonable expectation of privacy applied "as well or better" to the access of information involved in *Chatrie*. *Id.*

The decision in *Carpenter* was in some sense a "narrow one," deciding that an "individual maintains a legitimate expectation of privacy in the record of his physical

movements as captured through CSLI." *Id.* at 310, 316. But the practical import is much broader, as the Supreme Court ruled in *Chatrie* form of data collection (i.e., by the government's own surveillance or through a third party). *Id.* at 309–10. The Court's analysis to reach that decision utilized principles that are directly applicable to the case at hand.

From the beginning, the Court made clear that "[a] person does not surrender all Fourth Amendment protection by venturing into the public sphere." *Id.* at 310. Historically, an extended pursuit of a suspect would have been "'rarely undertaken'" and as a result, "'society's expectation has been that law enforcement agents and others would not – and indeed, in the main, simply could not – secretly monitor and catalogue every single movement of an individual's car for a very long period.'" *Id.* (quoting *United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring in judgment)). Allowing the government to surveil every single vehicle that drives past any number of cameras "contravenes that expectation." *Id.* at 311. Further, ALPR not only monitors in real time, but it does so across hundreds of cameras in Illinois and thousands nationwide. That number only continues to grow with each passing year. As if that's not enough, the third-party data holders, who do so at the behest of the government, retain every data point for law enforcement to search through – without a warrant. These data points are subject to a retention policy set by the Illinois State Police, which, as alleged in the Complaint, "may be adjusted by the Agency or Site Manager at any time." In other words, the data is retained for as long as the government decides.

The Court in *Carpenter* further explained that "the retrospective quality of the data" provides information to law enforcement that was previously "unknowable." *Id*. at 311. The Court noted that in the not-too-distant past, attempts to reconstruct a person's movements meant relying upon minimal records and fallible memories. *Id*. Yet now, with CSLI and here too ALPR technology, "the Government can now travel back in time to retrace a person's whereabouts." *Id*. With CSLI, the "newfound tracking capacity runs against everyone." *Id*. The same is true of ALPR cameras in the locations they are installed. One camera alone does not simply capture and retain information on vehicles of interest for which law enforcement might have a reasonable suspicion to stop; rather, each camera captures and retains information on every single vehicle that drives by. With hundreds of cameras in Cook County, and many more in other counties across Illinois, "[w]hoever the suspect turns out to be, he has effectively been tailed" every time he drives his vehicle. *Id*. at 312. "Only the few without [vehicles] could escape this tireless and absolute surveillance." *Id*. Moreover, law enforcement may access this surveillance data "without regard to the constraints of the Fourth Amendment." *Id.; see* 605 ILCS 140/5 (placing no warrant requirement on accessing the images collected by ALPR).

The Government here argues that the data points aggregated by ALPR are far less detailed than the data at issue in *Carpenter*. Yet, the Court in *Carpenter* squarely addressed the exact same argument by the Government and Justice Kennedy. The Court retorted, saying, "the Court has already rejected the proposition that 'inference insulates a search.'" *Id*. at 312 (quoting *Kyllo v. United States*, 533 U.S. 27, 36 (2001)).

It further expressed that from the 127 days of location data received, "the Government could, in combination with other information, deduce a detailed log" of movements. *Id*. For these reasons, as well as considering "more sophisticated systems that are already in use or in development," the Court determined that when the Government accessed CSLI from the cellular providers, it violated Carpenter's "reasonable expectation of privacy in the whole of his physical movements." *Id.* at 313.

In our present case, the uses of ALPR data that Appellants take issue with are exactly the concerns the Supreme Court discussed in reaching its decision in *Carpenter*. ALPR data is currently retained for 90 days, but the retention policy is set by the Government and could be increased without any check on its policy. Further, ALPR data, in combination with other information, can assist law enforcement in creating a history of detailed movements. The Government would have this Court believe that the data obtained is not that detailed, so in essence, it will not be as helpful or intrusive as cell phone data. However, this is akin to arguing that if a search of a person's home does not turn up any detailed information, then it was not a search under the Fourth Amendment. A search is a search, no matter the quantity of the fruits. *See Chatrie, 609 U.S. at ___ (slip op., at 20, 23)*.

**b. The Government misses the mark with the cases it presents in support of its argument.**

The Government provided two circuit court cases that it proffered in support of its argument. However, they are distinguishable from the matter here.

First, the Government asserted that the Fifth Circuit held that the use of ALPR technology did not violate any reasonable expectation of privacy. While true, the court in *United States v. Porter*, 170 F.4th 381, 386–87 (5th Cir. 2026), was not addressing a Motion to Dismiss but rather a Motion to Suppress. The burden and bar for overcoming either of those motions are drastically different. Further, the court did not utilize a similar analytical framework as the Supreme Court in *Carpenter*.[1] Instead, the court relied heavily on the facts surrounding how ALPR technology is used, as evidence was presented in the suppression hearing. Here, this Court cannot make a similar analysis because a 12(b)(6) Motion hearing is not an opportunity to present evidence to the court; the only facts to be considered by this Court are those alleged in the Complaint.

Next, the Government mentions a concurring opinion from the Ninth Circuit which summarized the Appellee's argument that ALPR databases provide the same degree of information at issue in *Carpenter*, which of course "falls apart under the barest of scrutiny." *United States v. Yang*, 958 F.3d 851, 862 (9th Cir. 2020) (Bea, J., concurring in the judgment). Appellants here do not make that same argument; ALPR data points are different from the data points in *Carpenter*, as well as from those in *Chatrie*. Appellants instead argue that the principles by which the Court analyzed the issue in *Carpenter*, and later adopted in *Chatrie*, are exactly applicable to this case.

## II. The Government mischaracterizes the standard by which this Court addresses the facts upon review of a motion to dismiss under Fed. R.

[1] *Chatrie* was decided three months after *United States v. Porter*.

**Civ. P. 12(b)(6).**

The facts alleged that the Government points to as "mischaracterizations" are the entire basis by which the Court is to judge Appellees' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). The Complaint is to be viewed in the light most favorable to the Appellants, "accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the Appellants'] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). As a result, the Government's arguments on this point are flawed from the start.

The Government concedes that "the Supreme Court has instructed courts to 'take account of more sophisticated systems that are already in use or in development.'" Brief of the United States as Amicus Curiae in Support of Defendants-Appellees, *Scholl v. Ill. State Police*, No. 25-1847 (7th Cir. filed July 6, 2026) (quoting *Carpenter*, 585 U.S. at 313). In pointing out that instruction, the Government further cites to *Carpenter* for the premise that the Supreme Court "cautioned that 'when considering new innovations,' courts should 'tread carefully . . . to ensure that we do not embarrass the future.'" Brief of the United States as Amicus Curiae in Support of Defendants-Appellees, *Scholl v. Ill. State Police*, No. 25-1847 (7th Cir. filed July 6, 2026) (quoting *Carpenter*, 585 U.S. at 316) (internal citations omitted). Yet this is taken out of context and does not provide the "caution" that the Government makes it out to be. Instead, this statement was made in the context of the Supreme Court explaining that *Carpenter* is a narrow decision:

> Our decision today is a narrow one. We do not express a view on matters not before us: real-time CSLI or "tower dumps" . . . . We do not disturb the application of *Smith* and *Miller* or call into question conventional

> surveillance techniques and tools, such as security cameras. Nor do we address other business records that might incidentally reveal location information. . . . As Justice Frankfurter noted when considering new innovations in airplanes and radios, the Court must tread carefully in such cases, to ensure that we do not embarrass the future.

*Carpenter*, 585 U.S. at 316. The Supreme Court made no caution to lower courts to do the same, but rather highlighted its own restraint by making a narrow ruling in *Carpenter*. The Court was not asserting that lower courts should never extend Fourth Amendment jurisprudence into "new innovations." If that were the case, then new technologies would never find their way before the Supreme Court. By making such an approach, the Carpenter decision supports Appellants' position that granting the Motion to Dismiss should be reversed. Without allowing this case to move forward to discovery, the lower court prevented the process of fleshing out the details and allowing it to "take account of more sophisticated systems that are already in use or in development." *Carpenter*, 585 U.S. at 313.

Here, the ALPR cameras are not "new innovations." They have been around for at least seventeen years. *See United States v. Lurry*, No. 2:09-cr-20312-JPM, 2010 U.S. Dist. LEXIS 118456, at *3 (W.D. Tenn. Nov. 8, 2010) (explaining that the defendant was stopped in 2009 after an officer's ALPR system revealed an outstanding warrant for a possible driver of the vehicle). Their use and capabilities only continue to grow as technology advances at warp speed. Indeed, in *Carpenter*, the Supreme Court noted that "the accuracy of CSLI" improved drastically from the time the case began at the trial level. *Carpenter*, 585 U.S. at 313. The Court further went on to directly point out that "the Government's position fails to contend with the seismic shifts in

digital technology that made possible the tracking of not only Carpenter's location but also everyone else's." *Id.* Here too, the Government fails to grapple with the "seismic shifts in digital technology" that similarly make possible the tracking of everyone's location on roadways. The Government's argument would have us remain in the early stages of Fourth Amendment jurisprudence where constant surveillance and recall were not possible, rather than encourage the courts to apply the same principles to a modern issue.

For these reasons, the Government's statements that Appellants' allegations are "mischaracterizations" and that the Court should not touch "new innovations" are themselves mischaracterizations of how this Court should approach the Complaint upon review of a Motion to Dismiss. If the Government takes issue with the facts alleged, then that further proves the point that the facts need to be determined through the district court's judicial process. Let the court determine just how invasive ALPR technology is to our freedom. Let Appellants proceed to the merits – after all, "Fourth Amendment cases must be decided on the facts of each case." *Dow Chem. Co. v. United States*, 476 U.S. 227, 238 n.5 (1986). Only then can we all continue the solemn work to hold to the principles of our Constitution.

## Conclusion

A constitutional framework: it's what this nation has worked within for 250 years. Equally important is the framework provided in Supreme Court precedent. Found in the Court's jurisprudence are the principles which undergird its decisions, and those principles are handed down to us for application to a wide swath of scenarios. For

that reason, and the reasons discussed above and in Appellants' briefs, the district court's full judgment should be reversed.

Dated: August 5, 2026

/s/ Reilly Stephens
Reilly Stephens
Jeffrey M. Schwab
Meredith Pettman
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org

*Attorneys for Plaintiffs-Appellants*

**Certificate of Compliance**

I certify that this brief conforms to the type-volume limitations imposed by Fed. R. App. P. 32 and Circuit Rule 32 for a brief produced using the following font: Proportional Century Schoolbook Font 12-point for body text, 11-point for footnotes. Microsoft Word for Mac was used. The length of this brief was 2,546 words.

/s/ Reilly Stephens
Reilly Stephens

## Certificate of Service

I hereby certify that on August 5, 2026, I electronically filed the foregoing Appellants' Brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Reilly Stephens
Reilly Stephens